### A94A1622. GORDON v. SOUTH CENTRAL FARM CREDIT, ACA.
(446 SE2d 514)

BLACKBURN, Judge.

The appellant, Annie Mae Gordon, filed the instant action sounding in tort against the appellee, South Central Farm Credit, ACA (South Central), based upon South Central's alleged wrongful foreclosure of approximately 137[1] acres of property located in Burke County pledged as collateral on a promissory note executed by Gordon and her two sons in favor of South Central's predecessor in interest.

Following the commencement of discovery, South Central moved for summary judgment, asserting that the foreclosure sale was conducted in accordance with the applicable law and the documents executed by the parties, and that the alleged inadequacy of the price received at the foreclosure sale affords Gordon no valid basis for relief. The trial court granted the motion, finding that Gordon defaulted under the terms of the promissory note, and South Central rightfully foreclosed upon the property pursuant to the terms of the deed to secure debt and the applicable statutory authority. This appeal followed.

In her sole enumeration of error, Gordon asserts that the trial court erred in granting the motion for summary judgment because material issues of fact remain for jury resolution on whether the value of the collateral greatly exceeded the outstanding indebtedness, whether the price realized on foreclosure was grossly inadequate, whether the loan was undersecured, and whether South Central acted

---

[1] Gordon alleges in her complaint that 142.3 acres of land were foreclosed at the December 1992 sale. However, the record shows that one acre of the land was not included as collateral at the time of the execution of the deed. In addition, four acres of the property in question were released from the deed for the purpose of constructing a residence in 1983, leaving 137.3 acres of realty remaining as collateral.

arbitrarily in foreclosing upon the real property.

The record viewed in the light most favorable to Gordon, the nonmovant, shows that on or about May 4, 1982, Gordon executed a deed to secure $10,000 in debt in favor of the Federal Land Bank of Columbia, South Carolina. Federal Land Bank subsequently assigned its interest in the promissory note to South Central in 1991. Paragraph 6 of the security deed specifically provided that if Gordon failed to abide by the terms of the promissory note or the terms of the deed, South Central could "[d]eclare all amounts secured by this instrument immediately due and payable without notice[,] [and] [s]ell at public outcry to the highest bidder for cash, at the courthouse of the county wherein said land or any part thereof lies, all or any part of said land, after advertising . . . in the newspaper. . . ." Gordon admitted in her deposition that she understood the terms of the power of sale contained in the deed.

It is undisputed that Gordon has been delinquent on her obligation to make timely payments under the promissory note and pay the annual property taxes on the property since the execution of the note in 1982 although the loan was reamortized in 1983 to provide for monthly payments instead of annual installments. As recently as November 1991, Gordon's property was scheduled for foreclosure for her failure to make monthly payments for several months but Gordon cured her default on the loan on the day prior to the scheduled sale. It is further undisputed that Gordon failed to make any monthly payments as they became due under the terms of the reamortized promissory note following her partial payment in July 1992. By certified letter of September 15, 1992, Gordon was notified of South Central's acceleration of the payments due and its intention to foreclose upon the property if Gordon did not cure the default. By certified letter of October 9, 1992, South Central further provided Gordon with copies of the legal advertisement of the scheduled foreclosure sale. The property was subsequently sold at the foreclosure sale in December 1992, to the highest bidder for $26,000, and South Central forwarded the excess proceeds to Gordon but Gordon returned the check to South Central. The excess proceeds have been paid by South Central into the court's registry. Gordon does not challenge the manner in which the sale was conducted or the sufficiency of the newspaper advertisements.

Under Georgia law, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." (Citations and punctuation omitted.) *Druid Assoc. v. Nat. Income Realty Trust*, 210 Ga. App. 684, 685 (436 SE2d 721) (1993). See also *Giordano v. Stubbs*, 228 Ga. 75, 77 (184 SE2d 165) (1971). The record in this case shows and Gordon concedes in her deposition that South Central

complied with the terms of the security deed by properly advertising the foreclosure sale and further concedes that the property was auctioned off from the courthouse steps to the highest bidder. See id. Gordon also admits that she was notified of the foreclosure sale pursuant to OCGA § 44-14-162 et seq.

While Gordon primarily maintains that the foreclosure sale did not realize an adequate sales price for the property, "[i]nadequacy of [the] price paid upon the sale of property under power [of sale contained in a deed to secure debt] will not of itself and standing alone be sufficient reason for setting aside the sale. It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside. . . ." *Stubbs*, supra at 79.

As this Court stated in *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330-331 (270 SE2d 867) (1980), "implicit in th[e] holding [in *Stubbs*, supra] is that the duty to sell the property according to the terms of the deed and to conduct the sale in good faith does not include a requirement that a specific amount such as the fair market value of the property be obtained. If the sale is conducted according to the terms of the power and in good faith the foreclosing party has satisfied his duties and obligations to the debtor pretermitting the alleged inadequacy of price. The foreclosing party has a duty to obtain that amount which results from a sale conducted according to the terms of the deed and in good faith. . . . [T]he focus is on the manner in which the sale was conducted and not solely on the result of the sale. The foreclosing party is not an insurer of the results of his exercise of the power of sale; his only obligation is to sell according to the terms of the deed and in good faith and to obtain the amount produced by such a sale. If the manner in which the sale was conducted is otherwise unobjectionable, the mere fact that, in the debtor's opinion, it brought an inadequate price does not demonstrate that the power was exercised other than in good faith."

In the case sub judice, Gordon, in response to South Central's motion for summary judgment, has submitted evidence that the price realized at the foreclosure sale was less than the fair market value of the property but "has cited no evidence showing that the price realized on the foreclosure of [her] property was grossly inadequate and accompanied by fraud or other improper circumstance. [Cit.] Because [Gordon] failed to rebut [South Central's] showing that it properly foreclosed on the property, the court did not err in granting summary judgment to [South Central] on the wrongful foreclosure claim." *Threadmill, Ltd. v. First Union Nat. Bank of Ga.*, 207 Ga. App. 688, 689 (1) (428 SE2d 685) (1993). We reject Gordon's assertion that

South Central's actions were governed by Georgia's Uniform Commercial Code since the case at bar does not involve the sale of goods and the Uniform Commercial Code is hence inapplicable. See *Lake Tightsqueeze v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178 (4) (435 SE2d 486) (1993).

Moreover, contrary to Gordon's assertion, she was not entitled to notice pursuant to OCGA § 13-4-4 that South Central intended to rely upon the exact terms of the promissory note and deed to secure debt before the company was entitled to accelerate the obligation and pursue foreclosure as a remedy to obtain payment. "Appellee accelerated the unpaid balance due on the note based upon appellant's total *failure* to make any payments whatsoever for three consecutive months. While there may be evidence that, in the past, appellee had accepted *untimely* payments and applicable late charges from appellant, there is no evidence that appellee had previously waived its right to *any* payment whatsoever on the note for a three-month period. Under OCGA § 13-4-4, a 'party must be given a reasonable opportunity to cure any deviations from the exact terms before foreclosure can be commenced due to *defaults which were tolerated under the quasi agreement*.' [Cit.] There is no evidence that appellee tolerated a previous three-month failure to make any payments on the note such that appellant would be entitled to receive notice before appellee could effect a valid acceleration based upon his instant three-month failure to make any payments whatsoever on the note." *Booth v. Gwinnett Fed. &c. Assn.*, 200 Ga. App. 60, 61 (406 SE2d 568) (1991). Under those circumstances, South Central was entitled to seek its remedies under the security deed, including acceleration of the debt and foreclosure proceedings, without providing Gordon with the notice contemplated under OCGA § 13-4-4. *Borden v. Pope Jeep-Eagle*, 200 Ga. App. 176 (3) (407 SE2d 128) (1991).

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 22, 1994 —
RECONSIDERATION DENIED JULY 12, 1994 —

*William R. McCracken*, for appellant.
*Brown & Livingston, Charles H. Brown*, for appellee.