### A00A1006. RAPPS v. COOKE et al.
(540 SE2d 241)

RUFFIN, Judge.

Betsy Luise Rapps and her husband, Richard Rapps, purchased a home from James and Ellen Cooke and executed a promissory note and a deed to secure debt in favor of the Cookes. After the Rappses defaulted on the debt, the Cookes foreclosed on the property. Betsy Rapps then sued the Cookes for, among other things, wrongful foreclosure.[1] The trial court granted the Cookes' motion for summary judgment, and Rapps appeals. For reasons that follow, we affirm.

Viewed in the light most favorable to Rapps,[2] the record reveals that the Rappses purchased the house in November 1994 and executed both a promissory note and a security deed. The Rappses were required to make monthly payments to the Cookes for a period of 30

---

[9] See id.

[10] See *In the Interest of C. I. W.*, supra.

[1] Rapps also alleged defamation of title and fraud. Both of those claims were addressed in this Court's opinion in *Rapps v. Cooke*, 234 Ga. App. 131 (505 SE2d 566) (1998).

[2] See *Rapps v. PHH US Mtg. Corp.*, 220 Ga. App. 602, 603 (2) (469 SE2d 731) (1996) ("any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment").

years. If the Rappses defaulted, the security deed provided that the Cookes could, upon proper notice, accelerate the debt. The following notice provision was handwritten in the deed: "Notice of default shall be given by certified mail — return receipt — to the property address. The notice shall provide that the borrower shall have 25 days from the date the notice is sent to cure the default before legal action is taken." An exhibit titled "Additional Provisions," which was attached to the security deed, provided that

> [a]ny notice or demand required to be given hereunder by the parties hereto shall be deemed to have been given and received (i) when actually received by the other party, if delivered in person, or (ii) 48 hours after a letter containing such notice, certified or registered, return receipt requested, with postage prepaid, addressed to such party is deposited in the United States Mail.

The Rappses defaulted on the note in September 1995, and the Cookes sent a notice of default informing them that they had 25 days in which to cure the default. The letter, which was sent via certified mail return receipt requested, was mailed to the address specified in the security deed. The Rappses apparently failed to claim the letter, which was then returned to the sender on or about October 17, 1995.

On October 26, 1995, the Cookes, through their attorney, wrote to the Rappses notifying them that they were accelerating the debt and instituting foreclosure procedures under the power of sale contained in the security deed. On October 31, 1995, Richard Rapps received this letter, which was also sent certified mail return receipt requested to the same address as the right to cure letter.

On November 15, 1995, the Rappses' attorney wrote the Cookes' attorney, acknowledging receipt of the acceleration letter, but claiming that they had never received notice of default. The Rappses demanded that the Cookes withdraw the foreclosure notice for failure to comply with the requirement in the security deed to provide a 25-day right to cure notice. According to Betsy Rapps, she called the Cookes' attorney and requested that he send another copy of the right to cure letter, but he refused either to send the letter or provide the payoff amount.

On November 29, 1995, Betsy Rapps filed a Chapter 13 bankruptcy petition, staying the foreclosure proceedings. On March 4, 1996, after granting the Cookes' motion for relief from the automatic stay, the bankruptcy court dismissed the bankruptcy case. Shortly thereafter, Richard Rapps filed for bankruptcy. Apparently, this action was eventually dismissed, too.

On November 4, 1996, after the bankruptcy petitions had been

dismissed, the Cookes again notified the Rappses of their intent to foreclose and forwarded a copy of the foreclosure advertisement that had been submitted to the newspaper. Betsy Rapps again requested a right to cure letter and a payoff amount, but was not given either. According to Ms. Rapps, had the information been provided, she and her husband "had sufficient assets to bring the debt current." Nevertheless, on December 3, 1996, the foreclosure took place.

Betsy Rapps sued the Cookes for wrongful foreclosure. The Cookes moved for summary judgment, asserting that they had properly foreclosed on the property. The trial court agreed and granted summary judgment to the Cookes.

1. In her first enumeration of error, Rapps contends that the trial court erred in granting summary judgment on her wrongful foreclosure claim because the evidence showed that the Cookes thwarted her right of redemption. According to Rapps, by failing to provide either the payoff amount or the right to cure letter, the Cookes failed to exercise their power of sale in good faith. We disagree.

"Under Georgia law, it is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies."[3] In exercising a power of sale, the foreclosing party is required only to advertise and sell the property in accordance with the terms of the instrument and to conduct the sale in good faith.[4]

Here, Rapps suggests that the Cookes failed to comply with the terms of the security deed in that they failed to provide notice of default. Under the plain language of the security deed, however, notice of default was to be sent certified mail return receipt requested to the property address. The evidence shows that the Cookes did, in fact, send notice of default in this manner.

Rapps asserts that, because she and her husband never received notice, it was invalid. The contract, however, did not require actual receipt of notice. To the contrary, the contract specifically provided that notice "shall be deemed to have been given and received . . . 48 hours after a letter containing such notice, certified or registered, return receipt requested, with postage prepaid, addressed to such party is deposited in the United States Mail." Accordingly, given the express language of the notice provision, "the actual receipt (or want of receipt) by the grantor of the notice of sale under power is immaterial to the right of the grantee to sale under power."[5]

---

[3] (Punctuation omitted.) *Gordon v. South Central Farm Credit, ACA*, 213 Ga. App. 816, 817 (446 SE2d 514) (1994).

[4] *Phillips v. Atlantic Bank &c. Co.*, 168 Ga. App. 590, 592 (3) (309 SE2d 813) (1983).

[5] *McCollum v. Pope*, 261 Ga. 835-836 (411 SE2d 874) (1992).

Rapps nevertheless contends that the Cookes did not act in good faith in that they failed, despite repeated requests, to provide a payoff amount. While it is true that "[g]ood faith in conducting the sale is not necessarily limited to the provisions of the deed,"[6] we see no evidence that the Cookes acted with anything less than good faith. Although the Cookes may never have provided a payoff amount to the Rappses, we are aware of no legal authority that requires them to provide this information.[7] Had the Rappses taken affirmative steps to indicate their willingness and/or ability to pay the entire debt, such as tendering a check in an amount approximating the payoff amount, bad faith might be inferred from the Cookes' failure to provide the actual amount due.[8] Here, however, it does not appear that the Rappses had either the willingness or ability to pay the entire debt. According to Rapps's affidavit, she sought only to cure the default, which she no longer had the right to do following acceleration of the debt.[9] Accordingly, in the absence of an expressed intent to pay the entire amount due, we will not infer bad faith from a creditor's failure to provide a payoff figure.

2. Betsy Rapps asserts that the bankruptcy proceedings terminated the foreclosure. She argues that, under OCGA § 44-14-85, the Cookes were required to send a second default notice to recommence foreclosure proceedings.

Under OCGA § 44-14-85 (a), if foreclosure proceedings are withdrawn, the withdrawal "shall operate to rescind the acceleration of the maturity of the indebtedness and to reinstate the indebtedness upon the terms and conditions existing prior to the acceleration." According to Rapps, this "statute clearly indicates that when the foreclosure does not take place after the notices are sent then the debt is reinstated to its pre-acceleration status as a matter of law." Again, we disagree.

In construing a statute, "a court must first look to the literal

---

[6] (Punctuation omitted.) *Brown v. Freedman*, 222 Ga. App. 213, 215 (1) (474 SE2d 73) (1996).

[7] See *Wright v. Barnett Mtg. Co.*, 226 Ga. App. 94, 96 (2) (485 SE2d 583) (1997) (providing reinstatement balance not required when foreclosing under power of sale contained in a security deed).

[8] The Rappses knew the amount they were required to pay each month and that they had not made a payment in fourteen months, and the promissory note specified a five percent penalty for late payment. Thus, the Rappses had sufficient information to at least approximate the payoff amount, and they could have tendered this amount. See *Grebel v. Prince*, 232 Ga. App. 361, 366 (2) (501 SE2d 538) (1998) (if there is a bona fide controversy over the amount owed, debtor may tender money admittedly due under note in order to block foreclosure sale).

[9] Although, on appeal, Rapps suggests that she would have paid off the entire debt, there is no evidence in the record that she ever communicated to the Cookes that she was willing or able to pay the entire debt.

meaning of the act, and if the language is plain and does not lead to absurd or impractical consequences, the court has no authority to place a different construction upon it but must construe it according to its terms."[10] In so doing, we give due weight and meaning to all of the words of the statute.[11]

Under its express terms, OCGA § 44-14-85 applies only to those foreclosure proceedings that have been withdrawn. According to Black's Law Dictionary, to withdraw means "to take from" or to "remove." The word connotes voluntary action. Here, the Cookes did not "remove" foreclosure proceedings; rather, the proceedings were stayed by the bankruptcy court as a result of action taken by the Rappses. The Cookes never took any action that was inconsistent with their intent to foreclose on the property. Accordingly, it cannot be said that they withdrew foreclosure proceedings within the meaning of OCGA § 44-14-85. Therefore, the trial court correctly concluded that the Cookes were not required to commence foreclosure proceedings anew, but could proceed with the original foreclosure after the stay had been lifted.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 4, 2000.

*Betsy L. Rapps, pro se.*
*Nath & Associates, Marvin C. Berkowitz,* for appellees.

---

[10] *Dept. of Revenue v. Sledge,* 241 Ga. App. 833-834 (1) (528 SE2d 260) (2000).
[11] *Boyles v. Steine,* 224 Ga. 392, 395 (162 SE2d 324) (1968).