**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0546. WILSON v. MOUNTAIN VALLEY COMMUNITY
    BANK.

MCFADDEN, Judge.

Daniel Wilson filed a complaint against Mountain Valley Community Bank, setting forth counts for tortious interference with business relations, intentional infliction of emotional distress, wrongful foreclosure, civil conspiracy to impair property rights, punitive damages and attorney fees. The trial court granted summary judgment to the bank on all counts. Wilson appeals, conceding that the trial court correctly granted summary judgment on the tortious interference and emotional distress counts, but claiming that the court erred in granting summary judgment on the other counts, that there was spoliation of evidence and that there should have been further discovery. Because there exist no genuine issues of material fact, Wilson has

not shown prejudice from the purported spoliation, and he has not shown an abuse of discretion by the trial court in refusing further discovery, we affirm.

1. *Summary judgment.*

"On appeal from the grant of summary judgment this [c]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Campbell v. Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011) (citations omitted).

So viewed, the evidence shows that on March 2, 2007, Wilson borrowed $303,689 from the bank, executing a note in that principal amount in favor of the bank and a deed to secure debt, which pledged certain real property in Jefferson, Georgia as security. The note was renewed multiple times, with the last renewal set to mature on April 28, 2009. Wilson defaulted on the note, and in July 2009, the bank commenced foreclosure proceedings against the property. Thereafter, the bank agreed to halt the foreclosure proceedings in exchange for a $25,000 payment. The parties entered into a debt modification agreement, which provided that the note had to be paid in full by October 30, 2009, or the bank would commence foreclosure proceedings.

After Wilson again defaulted on the note, the bank notified him of the default and of its commencement of foreclosure proceedings. The foreclosure sale was held on December 1, 2009, and the bank purchased the property for the note balance of $258,846. After the foreclosure sale, the bank received similar offers to purchase the property from real estate developer Mark Linkesh, and from Chris Worley, a friend of Wilson. The bank ultimately accepted Linkesh's offer and sold the property to him for $270,000, plus payment of unpaid property taxes, for a total sales price of $275,085.

a. *Wrongful foreclosure.*

A "security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies. In exercising a power of sale, the foreclosing party is required only to advertise and sell the property in accordance with the terms of the instrument and to conduct the sale in good faith." *Rapps v. Cooke*, 246 Ga. App. 251, 253 (1) (540 SE2d 241) (2000) (citations and punctuation omitted).

Here, Wilson suggests that the bank did not conduct the sale in good faith because it prevented Linkesh from bidding on the property, causing a reduced sale price below the fair market value of the property. However, the suggestion is baseless

3

as Wilson has pointed to no evidence showing that the bank somehow prevented Linkesh from bidding at the foreclosure sale. Rather, the sale was a matter of public record that Linkesh, like any other member of the public, could have attended.

Moreover, "inadequacy of the price paid upon the sale of property under power of sale contained in a deed to secure debt will not of itself and standing alone be sufficient reason for setting aside the sale." *Gordon v. S. Central Farm Credit*, 213 Ga. App. 816, 818 (446 SE2d 514) (1994) (citation and punctuation omitted).

> [T]he duty to sell the property according to the terms of the deed and to conduct the sale in good faith does not include a requirement that a specific amount such as the fair market value of the property be obtained. . . . The foreclosing party is not an insurer of the results of his exercise of the power of sale; his only obligation is to sell according to the terms of the deed and in good faith and to obtain the amount produced by such a sale. If the manner in which the sale was conducted is otherwise unobjectionable, the mere fact that, in the debtor's opinion, it brought an inadequate price does not demonstrate that the power was exercised other than in good faith.

Id. (citation and punctuation omitted). Here, the bank sold the property according to the terms of the deed. Thus, the mere fact that in Wilson's opinion the sale brought an inadequate price does not demonstrate an absence of good faith. As Wilson has failed to show the existence of a genuine issue of material fact, the trial court correctly granted summary judgment.

b. *Civil conspiracy.*

> A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.

*Jenkins v. Wachovia Bank, Nat. Assn.,* 309 Ga. App. 562, 567 (3) (711 SE2d 80) (2011) (citation omitted).

Wilson acknowledges that his civil conspiracy claim was premised on the underlying torts alleged in the wrongful foreclosure and tortious interference with business relations counts of the complaint. As discussed above, the trial court did not err in granting summary judgment on the wrongful foreclosure claim and Wilson has conceded that the trial court correctly granted summary judgment on the tortious interference count. Accordingly, there is no underlying tort to support his civil conspiracy claim and the trial court thus correctly granted summary judgment on that claim.

c. *Punitive damages and attorney fees.*

Wilson concedes that his claims for punitive damages and attorney fees are derivative of his substantive tort claims. Accordingly, because the trial court did not

err in granting summary judgment on those substantive claims, the derivative claims cannot survive.

2. *Spoliation.*

Wilson contends that there was spoliation of emails from a bank employee to Linkesh, and that such spoliation created a rebuttable presumption in his favor that precluded summary judgment. While Wilson is correct that spoliation creates a rebuttable presumption, the purported spoliation did not preclude summary judgment in this case.

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 544 (1) (659 SE2d 905) (2008) (citation omitted). Spoliation creates a rebuttable presumption that the claim against the spoliator is well founded. OCGA § 24-14-22. However, "even if evidence was wrongfully destroyed, the injured party still must show prejudice, and the grant of summary judgment is appropriate if the injured party cannot establish any causal link between the failure of his underlying claims and the alleged misconduct by the defendant." *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 797 (1) (697 SE2d 888) (2010) (citations and punctuation omitted).

6

Here, the trial court noted that in his spoliation motion, Wilson claimed that the purportedly missing emails would show that the bank employee "told Linkesh that Plaintiff's loan was in trouble, and it would most likely be foreclosed upon." The trial court presumed, for purposes of summary judgment, that this claim was true and that the employee had "told Linkesh that the loan was in trouble and would most likely be foreclosed upon." But even with such a presumption, the trial court correctly found that Wilson had failed to show any prejudice since that presumption did not create a genuine issue of material fact as to the wrongful foreclosure claim. As explained above in Division 1, the foreclosing bank's only obligation was to sell the property according to the terms of the deed in good faith. *Gordon*, supra. The presumed fact that Linkesh may have been informed about the likelihood of foreclosure not only has no bearing on whether the bank sold the property according to the terms of the deed, but actually contradicts Wilson's unfounded claim that the bank somehow prevented Linkesh from bidding on the property at the foreclosure. "As [Wilson] cannot establish any causal link between the failure of his underlying claims and the alleged [spoliation] by defendant, the grant of summary judgment in favor of defendant was not error." *Sharpnack v. Hoffinger Indus.*, 231 Ga. App. 829, 831 (499 SE2d 363) (1998).

3. *Further discovery.*

Wilson has shown no abuse of discretion by the trial court in denying his motion for additional discovery. "A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown. [Cits.]" *Woelper v. Piedmont Cotton Mills*, 266 Ga. 472, 473 (1) (467 SE2d 517) (1996).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*