**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A12A0442. PNC BANK, N.A. v. TIDWELL et al.

MCFADDEN, Judge.

In *Natl. City Mortg. Co. v. Tidwell*, 293 Ga. 697 (749 SE2d 730) (2013), the

Georgia Supreme Court reversed our decision in *PNC Bank, N.A. v. Tidwell*, 317 Ga.

App. 275 (728 SE2d 786) (2012), in which we dismissed this appeal for lack of

standing. The Supreme Court remanded the case for this court to consider the merits

of the appeal.

The merits involve the interplay between a contractual provision in a security

deed, which requires notice containing certain specified information before

foreclosure, and OCGA § 44-14-85, which provides that, when foreclosure

proceedings are withdrawn after acceleration, the debt is reinstated on pre-

acceleration terms. We hold that the trial court erred by finding that, as a matter of

law, there was no distinction between the bank's cancellation of advertised foreclosure sales and the "withdrawal" contemplated by the statute. Consequently, the trial court erred by granting summary judgment to the plaintiffs on their breach of contract claim against the bank, and we reverse.

A trial court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). "We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Woodcraft by MacDonald v. Ga. Cas. & Surety Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013) (citation and punctuation omitted).

Viewed in this light, the evidence shows that on April 1, 2003, Jennifer and Truman Littleton refinanced the loan on their home with First Southern Guarantee Financial Corporation, which assigned the loan and security deed to the bank.

At some point, the bank stopped crediting the Littletons' monthly payments to their account because, it contends, the amount of the payments was insufficient, due to a need for an increase in the amount of escrow account funds in order to pay increased taxes. In fact, the bank began returning the Littletons' checks, stating that

2

it was "unable to accept" them because they were "not [the Littletons'] total monthly payment." The plaintiffs,[1] on the other hand, contend that the Littletons had made overpayments and even had made an extra mortgage payment in advance of and in anticipation of the increased taxes and corresponding need for an increase in the amount in the escrow account.

According to the bank, the Littletons' deficit continued to grow. On April 2, 2004, the bank wrote the Littletons that they were in breach of the security deed for non-payment; that should they fail to cure the breach with a payment of more than $11,000, the maturity date of the note would be accelerated; and that they could face foreclosure. The bank scheduled a foreclosure sale of the property for July 6, 2004.

After Jennifer Littleton called the bank's foreclosure counsel, counsel took no further steps to proceed with the foreclosure sale scheduled for July 6, 2004, and the sale did not occur. Jennifer Littleton continued to communicate with foreclosure counsel, but foreclosure counsel nonetheless advertised the Littletons' property for foreclosure sales in October 2004, November 2004, and January 2005. The bank did not proceed with the foreclosure sales scheduled for October 2004 and November

---

[1] During the course of the litigation, the trial court substituted bankruptcy trustee J. Coleman Tidwell for Jennifer Littleton as plaintiff; the plaintiffs are Tidwell and Truman Littleton.

2004. but foreclosed on the Littletons' property on January 4, 2005. After the foreclosure sale, the bank forwarded to the Littletons $37,875.00, monies paid by the Littletons but not credited to their account.

In 2007, the Littletons filed this action against the bank, asserting claims for breach of contract, wrongful foreclosure, breach of the duty of good faith and fair dealing, slander of title, theft by deception, theft by conversion, a RICO violation, loss of credit standing, loss of reputation, emotional pain, and fraud. Both sides moved for summary judgment. In an order entered May 24, 2011, the trial court, among other things, denied the bank 's motion for summary judgment and granted the plaintiffs' motion for summary judgment on their breach of contract claim. The bank brought this appeal.

The plaintiffs based their breach of contract claim on the ground that the bank failed to provide contractually required notice before foreclosing on the property. The notice requirement is in section 22 of the security deed, which concerns acceleration. Section 22 sets out the information to be included in the notice. It provides in pertinent part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this

4

Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. . . .

The bank argues that its April 2004 notice satisfied the notice requirement in the security deed and that it was not required to give additional section 22 notice before proceeding with foreclosure simply because it cancelled the July, October and November foreclosure sales. It argues that OCGA § 44-14-85 (a), which provides for reinstatement of the debt on pre-acceleration terms if foreclosure proceedings are withdrawn, does not apply and did not require it to send the Littletons additional section 22 notice before conducting the January foreclosure sale. We hold that the trial court erred in resolving that issue by summary judgment.

OCGA § 44-14-85 (a) provides that withdrawal of foreclosure proceedings reinstates the indebtedness on pre-acceleration terms:

The acceleration of the maturity of an indebtedness which is evidenced by a note or otherwise and secured by a deed to secure debt conveying real property and the commencement of foreclosure proceedings by the advertisement of a sale under the power contained in the deed or by an action shall not commence the running of the statute of limitations against the exercise of any right, power, or privilege authorized in the deed or the evidence of the indebtedness secured thereby or the right to bring an action to enforce any provision of the deed or to collect the indebtedness secured thereby if the foreclosure proceedings are withdrawn prior to their completion by sale or otherwise. *Such withdrawal shall operate to rescind the acceleration of the maturity of the indebtedness and to reinstate the indebtedness upon the terms and conditions existing prior to the acceleration. Such withdrawal shall not prejudice the right of the holder of the indebtedness and deed securing same to exercise any and all rights to accelerate the maturity of the indebtedness and to exercise any right or power contained in the deed or the evidence of the indebtedness secured thereby or conferred by law should a subsequent default occur.*

(Emphasis added.)

We conclude that withdrawal of foreclosure proceedings and postponement of those proceedings are distinct. The trial court erred in holding as a matter of law that

6

the repeated postponements of the foreclosure proceedings constituted withdrawal of those proceedings and therefore invoked the requirements of OCGA § 44-14-85 (a).

Our Supreme Court has assumed that parties are free to draw that distinction. See *Old Stone Co. I v. Hughes*, 284 Ga. 259 (663 SE2d 687) (2008). In that case, "[t]he foreclosure date was changed several times while the parties tried to work out their differences." Id. at 295. The mortgage holder ultimately proposed a method to resolve the parties' dispute – that the mortgage holder *withdraw* the foreclosure proceedings and extend the expiration date of the underlying promissory note, thereby allowing the debtor time to sell the property. Id. The trial court subsequently issued an order adopting this proposal, id. at 259-260, and the Supreme Court found that the debtors acquiesced to this solution. Id. at 262 (3). See also *Gregorakos v. Wells Fargo Natl. Assn.*, 285 Ga. App. 744 (647 SE2d 289) (2007) (lender "temporarily postpone[d] foreclosure proceedings to give [debtor] time to obtain new financing, pay off the loan, and have the security deed cancelled").

Here, the bank argues that it simply postponed the foreclosure proceedings. It argues that the word "withdrawal" indicates "to take back for good" and that the statute's use of the phrase withdrawal of "such foreclosure proceedings" must

7

therefore be construed to mean "the permanent cessation of foreclosure where the breach has been either cured or expressly waived."

We have previously construed "withdraw," as it is used in OCGA § 44-14-85 (a), to entail a voluntary act by the lender. See *Rapps v. Cooke*, 246 Ga. App. 251 (540 SE2d 241) (2000). In that case we construed the statute's use of "withdraw" in the context of the stay arising from the borrowers' bankruptcy. We observed that when construing a statute,

> a court must first look to the literal meaning of the act, and if the language is plain and does not lead to absurd or impractical consequences, the court has no authority to place a different construction upon it but must construe it according to its terms. In so doing, we give due weight and meaning to all of the words of the statute.

Id. 254-255 (2). Citing Black's Law Dictionary, we then concluded that because "to withdraw means 'to take from' or to 'remove[,]' [t]he word connotes voluntary action." Id. Because the lenders took no voluntary action inconsistent with their intent to foreclose -- since the reason for the cessation of the foreclosure proceedings was the borrowers' bankruptcy, not anything the lenders did -- "it [could not] be said that they withdrew foreclosure proceedings within the meaning of OCGA § 44-14-85."

Id. Here the bank contends that, like the lenders in *Rapps*, the bank "never took any action that was inconsistent with [its] intent to foreclose on the property." Id.

After Jennifer Littleton called the bank's foreclosure counsel, counsel took no further steps to proceed with the foreclosure sale scheduled for July 6, 2004, and the sale did not occur. Counsel agreed to "start reviewing" the records. Jennifer Littleton continued to communicate with foreclosure counsel trying to resolve the issues. But foreclosure counsel continued to advertise the Littletons' property for foreclosure in October 2004, November 2004, and January 2005, ultimately foreclosing on the Littletons' property on January 4, 2005.

We therefore conclude that the trial court erred in granting summary judgment on the basis that, as a mater of law, the bank's actions constituted a withdrawal of foreclosure proceedings within the meaning of OCGA § 44-14-85.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*