**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 19, 2017**

# In the Court of Appeals of Georgia

A17A0404. SMITH et al. v. DIFRANCESCO.

MILLER, Presiding Judge.

In this appeal, we must determine whether the trial court properly found that the defendant doctor was entitled to summary judgment on the plaintiff doctor's claim of defamation per se based on the defendant's transmission of a letter to patients in which the defendant called into question the plaintiff's ability to practice medicine. For the reasons that follow, we reverse the trial court's order and remand the case for further proceedings.

"On appeal from a grant of summary judgment, we review the evidence de novo to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law."

(Citation omitted.) *Chapman v. C. C. Dickson Co.*, 273 Ga. App. 640, 641 (1) (616 SE2d 478) (2005).

So viewed, the evidence shows that Cenegenics is a company that provides age management services throughout the country and operates a clinic in Atlanta through CG Physicians, LLC ("CG Physicians"). Dr. Randy Smith is the sole shareholder of CG Physicians and at all relevant times was a licensed physician. Cenegenics and CG Physicians formed a management company to handle the administrative duties of the Atlanta practice.

In 2013, at Cenegenics' insistence, Smith stopped seeing patients at the Atlanta clinic and directed his focus to business development. Dr. Lisa DiFrancesco and another physician were hired to take over patient care in the clinic. In March 2014, Smith left Cenegenics altogether. He then contacted at least some CG Physicians patients by e-mail to offer his anti-aging programs.

At least two of these patients contacted DiFrancesco, expressing concern about the e-mails from Smith. DiFrancesco authorized Cenegenics to send a letter to all CG Physicians patients to address these concerns. In the letter, DiFrancesco made the following statements:

You may have received an e-mail from a physician by the name of Dr. Randy Smith regarding your Cenegenics program. At one time Dr. Smith was a physician with Cenegenics Atlanta.

We are contacting you so that you may make an informed decision if Dr. Smith attempts to contact you to entice you to discontinue your Cenegenics Age Management Program with me . . . .

Dr. Smith is no longer authorized to offer the Cenegenics Program . . . .

While Dr. Smith was an early pioneer in anti-aging medicine, much has changed since his early days in the practice, and *a lot has changed over the last year since [Dr. Smith] last had the ability to practice medicine*.

If you would like more information about anything you may hear or receive about changing your course of treatment, please feel free to contact us.

(Emphasis supplied.) DiFrancesco sent this letter only to patients of CG Physicians.

Thereafter, Smith sued DiFrancesco for defamation based on her letter to CG Physicians' patients. He also requested equitable relief and punitive damages. The

trial court granted summary judgment in favor of DiFrancesco, finding that the letter was not defamatory per se.[1]

1. Smith first argues that the trial court erred by granting summary judgment to DiFrancesco because the statement at issue constituted defamation per se, as it did not require innuendo to be understood as injurious. We agree.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). There are four elements to a defamation claim: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citation and punctuation omitted.) *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2) (573 SE2d 376) (2002).

Here, the trial court concluded that the statement was not defamatory per se because it required innuendo to be understood as injurious. We disagree. "A written

---

[1] CG Physicians was also named as a plaintiff. It is undisputed that there was no statement made concerning this entity, and Smith does not challenge the grant of summary judgment with respect to this plaintiff. Smith's breach of contract claims against Cenegenics remain pending in the superior court and are not part of this appeal.

defamatory statement is actionable as either libel per se or libel per quod." (Citation omitted.) *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 688 (2) (500 SE2d 1) (1998). The trial court found, and Smith conceded, that Smith alleged only libel per se.

> Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. Statements that tend to injure one in his trade or business also are libelous per se. When determining whether words are defamatory as a matter of law, courts may not hunt for strained constructions and must rely upon the words themselves in considering whether a statement was defamatory per se. Defamatory words which are actionable per se are those which are recognized as injurious on their face – without the aid of extrinsic proof. However, if the defamatory character of the words does not appear on their face but [they] only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo. The law is abundantly clear in Georgia – words that are libelous per se do not need innuendo.

(Citations and punctuation omitted.) Id. In other words, "[t]he defamatory character of written material must appear on its face." (Citation omitted.) Id. at 689 (2); see also *Cottrell v. Smith*, 299 Ga. 517, 523 (II) (A) (788 SE2d 772) (2016) (words that require extrinsic proof to show their defamatory nature are not libel per se). As our Supreme Court recently explained,

5

[a]s for defamation in regard to a trade, profession, or office, the kind of aspersion necessary to come under this phase of the rule of [defamation] per se must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation. The words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession.

(Citation and punctuation omitted.) Id. at 524 (II) (A). Where a statement is defamatory per se, the element of damages is inferred. *Strange v. Henderson*, 223 Ga. App. 218, 219 (477 SE2d 330) (1996).

Here, the words in DiFrancesco's letter, on their face, included the phrase "since Smith last had the ability to practice medicine." To determine if these words are defamatory per se, we consider their "natural and obvious meanings," *Smith v. Stewart*, 291 Ga. App. 86, 97 (2) (b) (660 SE2d 822) (2008), and "look[] to the plain import of the words." (Citation and punctuation omitted.) *Bellemead, LLC v. Stoker*, 280 Ga. 635, 637 (631 SE2d 693) (2006). The "ability to practice medicine," in its normal and obvious meaning, indicates that Smith has lost his license or no longer

6

has the physical or mental capacity to practice medicine.[2] This interpretation requires no innuendo because either meaning is injurious to Smith's reputation in his profession. See *Cottrell*, supra, 299 Ga. at 524 (II) (A); *Bellemead*, supra, 280 Ga. at 637; see also *Ultima Real Estate Investments, LLC v. Saddler*, 237 Ga. App. 635, 636 (1) (516 SE2d 360) (1999) (statements that plaintiff "did not know what he was doing" in his business dealings were actionable as slander).

DiFrancesco argues that the challenged statement refers to Smith's ability to practice *with Cenegenics*, but nothing in the words themselves would reasonably lead a reader to that interpretation. The average reader viewing the entire letter would not understand it to mean that Smith was still licensed to practice medicine but simply no longer able to practice *with Cenegenics*. See *Lucas v. Cranshaw*, 289 Ga. App. 510, 513 (1) (659 SE2d 612) (2008) (instructing courts to look at a writing as the average reader to whom it is addressed would). Any reader would naturally conclude that Smith could no longer practice medicine. We thus cannot adopt DiFrancesco's "strained construction" that the statement on its face referred only to Smith's involvement with Cenegenics rather than his ability to practice medicine generally.

---

[2] See https://www.merriam-webster.com/dictionary/ability (defining the term "ability" as the "physical, mental, or legal power to do something" or "competence in doing something").

See *Zarach*, supra, 231 Ga. App. at 688 (2). Accordingly, the trial court erred in finding that the statement was not defamatory per se.

2. Smith next argues that the trial court erred in finding that the statement was privileged as a matter of law. Again, we agree.

The trial court found that DiFrancesco was entitled to summary judgment on the alternate ground that the challenged statement was privileged. See OCGA § 51-5-7; *Smith*, supra, 291 Ga. App. at 91 (1) (setting out elements of defamation to include *unprivileged* communication).

A defendant who has made a statement that is defamatory may nevertheless avoid liability if the statement was privileged, absent a showing of actual malice.[3] *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 130 (1) (a) (670 SE2d 818) (2008).

Statements made with a good faith intent on the part of the speaker to protect her interest in a matter in which she is concerned are subject to conditional privilege. See OCGA § 51-5-7 (3). To establish that the defamatory statement was conditionally

---

[3] Georgia law recognizes two different kinds of privilege, absolute and conditional. *Saye*, 295 Ga. App. at 130-131 (1) (a). DiFrancesco does not argue that the statement at issue here is absolutely privileged. See OCGA § 51-5-8. Thus, we look to whether the trial court properly found that DiFrancesco's statement was subject to conditional privilege.

privileged, DiFrancesco must show that (a) she acted in good faith; (b) in connection with an interest to be upheld; (c) the statement was properly limited in its scope and occasion; and (d) publication was made to proper persons. *Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 442 (2) (425 SE2d 676) (1992); OCGA § 51-5-7 (3). See also *Dominy v. Shumpert*, 235 Ga. App. 500, 504-505 (2) (510 SE2d 81) (1998). The question of conditional privilege is typically for the jury. *Cohen v. Hartlage*, 179 Ga. App. 847, 849 (348 SE2d 331) (1986).

Based on the limited record before us, we conclude that there remains a genuine issue of material fact regarding all the elements of privilege. DiFrancesco argued, and the trial court found, that the statement was privileged because DiFrancesco acted in good faith and limited publication of the statement to patients Smith has contacted.[4] Smith argues in response that DiFrancesco did not act in good faith because she did not take any steps to determine the truth of the statement, she was motivated by greed rather than a concern for patients, and because the patients

---

[4] DiFrancesco argued before the trial court that the statement was privileged as both a statement in performance of a public duty and as one made with a good faith intent to protect her interest in the matter under OCGA § 51-5-7 (1) and (3). The trial court found only that it was privileged as a good faith statement to protect one's interest.

9

who received the message were not just DiFrancesco's patients but were instead patients of his practice, CG Physicians.

The record does not conclusively show that DiFrancesco acted in good faith because it is undisputed that Smith was at all times licensed to practice medicine and DiFrancesco had no basis to believe otherwise. Cf. *Smith v. Henry*, 276 Ga. App. 831, 832-833 (1) (625 SE2d 93) (2005) (speaker acted in good faith when he based the challenged statement on conversations with the plaintiff and other employees of the tax assessor's office and he believed his comments were true). Moreover, there is a factual question as to whether the statement was properly limited in scope or audience. The record before us contains only the affidavits of Smith and DiFrancesco, e-mails between DiFrancesco and Cenegenics about the statement issued to patients in which DiFrancesco asks Cenegenics to contact all her patients, and a copy of the CG Physicians management agreement. These documents do not conclusively establish who received the letter from DiFrancesco or that the publication was properly limited to only DiFrancesco's patients who received communication from Smith. See *Smith v. Vencare, Inc.*, 238 Ga. App. 621, 626-627 (2) (e) (519 SE2d 735) (1999) (where there is some evidence to rebut claim of an element of privilege,

summary judgment is improper) (physical precedent only). Therefore, the question of privilege is for the jury. *Cohen*, supra, 179 Ga. App. at 849.

Accordingly, the evidence did not authorize the trial court to conclude, as a matter of law, that DiFrancesco's statement was privileged. We therefore reverse the trial court's order granting summary judgment, and remand the case for further proceedings.

3. Finally, because we conclude that summary judgment was improper, we need not address Smith's claim of actual malice.

*Judgment reversed and case remanded. Doyle, C. J., and Reese, J., concur*.

11