**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A0906. BATH v. INTERNATIONAL PAPER COMPANY et al.

MCMILLIAN, Judge.

Plaintiff/appellant Stephen Christopher Bath was severely injured when he was electrocuted while working at defendant International Paper Company's ("IP") Savannah, Georgia plant ("plant or mill"). He brought a premises liability and negligence action against IP and IP employee William Brown ("defendants") seeking to recover damages for his injuries.[1] Defendants moved for summary judgment, which the trial court granted after a hearing. Bath now appeals from that ruling.

---

[1] International Paper and Brown were the only defendants originally named in the complaint. Other plaintiffs and defendants were subsequently added to this lawsuit, but at the time this appeal was filed, IP and Brown were the only remaining defendants.

At the time of his injury in February 2013,[2] Bath was a third-year electrical apprentice employed by White Electrical Construction Company ("White Electrical"). White Electrical had contracted with IP to perform electrical maintenance and repairs during a regularly scheduled "field day" at the mill. During field days, which IP schedules at regular intervals throughout the year, the paper mill is essentially shut down and independent contractors and mill workers make repairs and perform maintenance that cannot be performed while the mill is operational. One of the primary jobs of White Electrical that day was to repair and replace lights that were not functioning, including lights that were located in the dryer press basement area of the Number 8 paper machine.[3]

Bath arrived at the plant that morning without his tic tracer, which is a device used to detect "live" electrical current, and was given one by his supervisor Jerry

---

[2] We construe the facts and disputed testimony, and any inferences therefrom in favor of Bath as the nonmovant on summary judgment. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (697 SE2d 779) (2010); *Jimenez v. Gilibane Bldg. Co.,* 303 Ga. App. 125, 126 (693 SE2d 126) (2010).

[3] The plant is composed of numerous such "paper machines" which are actually large, football field sized buildings standing multiple stories high where the paper products are produced. These buildings contain numerous hanging lights to provide illumination. Generally speaking, it is impossible to replace or repair the hanging lights inside the machines while the machines are operational.

Grubbs.[4] Grubbs, Bath, Michael Baxter, who at that time was a five-year electrical apprentice, and another worker then went inside the plant. They were met by defendant Brown, and he, Grubbs and IP journeyman electrician Lee Linton discussed the lights they would be working on that day. Grubbs was also provided a copy of a partial lighting plan or diagram which showed the inoperable lights in the dryer press basement area of the Number 8 machine on which they would be working. The circuit that powered the lights and the panel box where it was contained were written on either side of the drawing of the light, and these notations indicated that all the inoperative lights were energized by Circuit 23 contained in Panel Box 8, or "LP8-23." The workers then had a discussion about the plans with the IP employees testifying that they had warned the White Electrical employees that the plans might not be accurate. The White Electrical workers denied that they heard Brown or Linton warn them about the plans or the voltage.

The IP employees then left the area, and the White Electrical employees tripped, tagged, and locked out Circuit 23 in Panel Box 8. They then went back to the dryer basement press area and tested the wires to the lights they would be working on to make sure they had been de-energized when they tripped the circuit. Bath was

---

[4] Due to his injuries, Bath has no memory of the day he was injured.

3

specifically observed using his tic tracer to make this check along with the other workers.

After working on repairing the lights for several hours, the White Electrical workers took a break and then came back and re-energized the lights to see if their repairs had been successful. However, "the last three lights" were still not working, and Grubbs testified that he told the other workers that probably meant there was a broken wire in a higher conduit that had not yet been checked. He instructed Bath and Baxter to trouble shoot the non-working lights, and they all went back to the panel box where Bath and Baxter again tagged and locked out Circuit 23 in Panel Box 8. Grubbs and the other White Electrical employee then went to another area of the plant to make repairs, and Bath and Baxter returned to trouble shoot the non-working lights.

Baxter and Bath had to use a scissors lift to reach the conduits they believed contained the wires to the inoperable lights. Baxter then exited the lift and climbed up on the condulet to reach the conduit containing the wires.[5] Baxter and Bath began

[5] A condulet is a fitting resembling a pipe or box with a removable cover for access to electric conduits. An electrical conduit is the tube used to route electrical wiring in a building or structure. Merriam Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/condulet,,http://www.merriam-webster.com/dictionary/conduit.

to pull on the wires from different ends, discovering through trial and error that one of the wires was broken. Bath remained on top of the condulet while Baxter handed him new wires and other tools to replace the broken wire. Because he was on top of the condulet reaching down into the conduit to access the wire, Bath remained mostly hidden from Baxter's view, and Baxter testified he could not see if Bath used his tic tracer before he began connecting the new wire. However, he said that he suddenly realized that Bath had gone quiet and his legs had become rigid. Baxter surmised that Bath was receiving an electrical shock, and he grabbed Bath by the non-conductive part of his safety vest, and pulled him down, breaking the connection. Medical help was summoned, and Bath was resuscitated and then transported to the hospital, where he remained for several months.

IP immediately took control of the area where the accident occurred and began investigating the cause of the accident. During the course of their investigation, IP learned that there were 110 and 277 voltage wires going to the light where Bath had been working, which were powered by a different circuit located in a different panel box. Because this circuit had not been de-energized, Bath cut into an energized or "live" wire when he was attempting to replace the broken wire. IP had the broken wire repaired, and the light fixture and wire that had been in place on the day of the

5

accident were placed in a box and stored. However, that box later went missing, and the light fixture and wire have never been located. Although Bath's tic tracer was observed in the scissors lift following accident, it was not returned with the other tools left in the dryer press basement area following the accident and has never been located.

Based on these events, Bath alleged that defendants negligently provided them with an out-of-date, inaccurate, and misleading lighting plan and negligently represented to White Electrical which circuit and lighting panel provided the source of electric power to the lights on which they were performing repairs.[6] Defendants filed separate motions urging four independent grounds why they should be granted summary judgment: (1) IP had surrendered the relevant portion of the premises to White Electrical and thus had no liability to White Electrical's employees who were injured while working under the terms of the Purchase Contract; (2) White Electrical's failure to properly de-energize the wire was an intervening and proximate cause of Bath's injury; (3) IP lacked superior knowledge of the alleged hazard that

_____

[6] Bath also contended that the wires were improperly color coded, which also misled him into thinking the wires were 110 volts. However, the record is replete with evidence that no such color coding is required in an industrial setting, so we will not dwell on this claim.

6

resulted in Bath's injury; and (4) Bath assumed the risk of his injuries when he touched a live wire without testing it.

Prior to the trial court's ruling on defendants' summary judgment motions, Bath filed a motion for sanctions based on the alleged spoliation of evidence, including the tic tracer he had been using that day and the wires and lights that were replaced. Bath argued that, as to the tic tracer, the lost evidence prevented him from testing the tracer to determine if it was working properly at the time he was injured, which would negate defendants' defenses based on his failure to use the tic tracer to determine if the wire was energized before he started working on it. As to the light fixture, Bath argued that, by tracing the serial number, it would be possible to determine when the light fixture was last replaced, which was relevant to determining whether IP had knowledge of the 277-volt circuit in that part of Machine Number 8, and whether it knew about the volt and should have updated its plans accordingly. Defendants responded,[7] arguing in part that the allegedly spoliated evidence was relevant to only one asserted ground for summary judgment – assumption of the risk – and that, therefore, under well established appellate case law the trial court could

---

[7] Defendants' response, as well as other filings in this case, were placed under seal pursuant to stipulation and protective order of confidential material.

7

enter summary judgment in their favor based on any of the other grounds asserted in their motion without first ruling on the motion for sanctions.

Without specifying which grounds, the trial court agreed with defendants that Bath's motion for sanctions was unrelated to three of the grounds for summary judgment, and thus those grounds could be considered, and summary judgment granted if warranted, even if spoliation had occurred. The court then went on to rule against defendants on the issue of contractual surrender, deemed summary judgment improper on the assumption of the risk defense because of the spoliated tic tracer, but granted summary judgment to defendants on the grounds of lack of reasonable reliance on the trial court's sua sponte re-framed claim for "negligent misrepresentation," intervening cause or failure to prove proximate cause, and lack of superior knowledge. This appeal followed.

1. Bath contends that the trial court erred in granting summary judgment because IP spoliated key pieces of evidence.

> Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation. Such conduct creates the presumption that the evidence would have been harmful to the spoliator. Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent, a fact rendering summary judgment inappropriate.

8

(Citation and punctuation omitted.) *Baxley v. Hakiel Indus., Inc.,* 282 Ga. 312, 313 (647 SE2d 29) (2007). However, it is true that "even if the evidence is wrongly destroyed, the injured party still must show prejudice, and the grant of summary judgment is appropriate if the injured party cannot establish any causal link between the failure of his underlying claims and the alleged misconduct by the defendant." (Citation and punctuation omitted.) *Wilson v. Mountain Valley Community Bank*, 328 Ga. App. 650, 652 (2) (759 SE2d 921) (2014). Accordingly, the issue is whether the trial court properly found that there was no meaningful link between the allegedly spoliated evidence and defendants' proximate cause and lack of superior knowledge defenses, and that even if there was, it would not affect the outcome of the court's rulings in this case. As more fully set forth below, we find that the trial court erred in making this determination.

(a) *Proximate Cause.* The trial court concluded that summary judgment was appropriate based on a finding that "the final, proximate cause of Plaintiff's injury was White Electrical's failure to de-energize the 277-volt wire." Pretermitting the soundness of that ruling, see *Miller v. Turner Broadcasting Sys. Inc.*, 339 Ga. App.

9

638, 643 (1) (794 SE2d 208) (2016), *cert. denied*, May 30, 2017,[8] defendants contended in making their proximate/intervening cause argument that they were absolved from liability because White Electrical failed to lockout/tagout the 277-volt circuit and Bath did not use his tic tracer. As the trial court also noted, whether Bath used his tic tracer was a "hotly contested" issue in this case, and the trial court made a specific finding that Bath could and should have discovered the alleged hazard "as he had an uncontroverted obligation to use the tic tracer to determine the existence of electrified wires." But, as Bath contends, without the missing tic tracer, he could not conduct tests to see if it was working properly or if it might have been affected by conditions in the press basement area where he was working.[9] And if Bath could

---

[8] In *Miller,* we held that it was for a jury to decide whether defendants' negligence in mislabeling a panel box was the proximate cause of plaintiff's injuries even where there was no evidence plaintiff or the other electrical workers were using their tic tracers and circumstances indicated plaintiff must have known that something was wrong because his co-worker had been shocked just minutes before on the same wire. 339 Ga. App. at 643 (1). Here, the undisputed evidence shows that Bath and his co-workers were using tic tracers earlier in the day, Bath's tic tracer was found near his person after the accident, and Bath and the other workers had successfully de-energized other lights in the area they were working by tripping the circuit marked on the plans.

[9] Bath has also presented some evidence that high humidity and the presence of pulp wood may have an effect on whether a tic tracer will work properly. We express no opinion about whether the evidence demonstrates these conditions were present at the time of the accident.

have shown that his tic tracer was not working at the time of the accident, any findings based on Bath's failure to use the tic tracer would be discredited and any defenses available to defendants based on this failure would be lost. Thus, we believe the trial court erred to the extent it found that there was no meaningful connection between the lost tic tracer and the grounds asserted by defendants to support summary judgment.[10]

(b) *Premises Liability and Superior Knowledge.* As to the issue of superior knowledge and the light fixture, the trial court agreed that the light fixture was relevant to the issue of IP's knowledge of the 277-volt wires, but went on to find that even if it determined that there was spoliation of the light fixture, it would show only a possible date of manufacture and/or a timeframe within which the light was

---

[10] We note that in addition to undertaking a proximate cause analysis and granting summary judgment to defendants on that basis, the trial court also "re-framed" Bath's claims to state a cause of action for the tort of negligent misrepresentation and then went on to determine that defendants were also entitled to summary judgment on these re-framed claims because Bath could not establish the essential element of reasonable reliance. On appeal, Bath asserts this sua sponte re-framing of his claims was error. See OCGA § 9-11-15 (b); *Investment Properties Co. v. Watson*, 278 Ga. App. 81, 87 (3) (a) (628 SE2d 155) (2006). Defendants do not directly address this issue, arguing instead that there are multiple grounds to affirm summary judgment in this case. In any event, we need not address this issue since the alleged spoliation of evidence would also be relevant to this issue, and depending on the disposition of the spoliation motion, the parties will have an opportunity to revisit the trial court's re-framing of Bath's claims upon remand.

changed, which would be irrelevant because the undisputed testimony indicates that contractors have been replacing the machine for decades, a fact the trial court says no party disputes.

Although it is true that the evidence showed that electrical contractors took over the majority of electrical work and repairs in the mill in or around 2000, the evidence also showed that IP conducted its own electrical maintenance and repair from the time the Number 8 paper machine became operational around 1990 or 1991 until it began to use electrical contractors for the majority of the repairs about ten years later. Brown in particular testified that he worked on the lights in the Number 8 paper machine during the time IP conducted those repairs and that maintenance included working on lights in the press basement area. Further, Brown testified that although he initially used the lighting plans to determine the location of the circuit breakers to the lights he was working on, over time he no longer relied on those plans both because he became familiar with the electrical layout and because he knew those plans were no longer "as-built." Thus, if the light fixture was manufactured and replaced by IP during the time when IP was performing its own lighting maintenance and repairs, it would certainly be relevant to whether defendants had superior

12

knowledge that 277-volt wires powered that light, rendering summary judgment on that issue inappropriate.

Because the trial court erroneously concluded that the alleged spoliated evidence was unrelated to the grounds upon which summary judgment was granted, we find it necessary to vacate the trial court's order granting defendants' motion for summary judgment and remand for further proceedings on the motion for sanctions and other matters consistent with this opinion. However, we reiterate that we express no opinion about the ultimate determination on the spoliation issue, including possible remedies the trial court may impose in the event it determines that IP wrongfully destroyed the evidence.[11] *Kitchens v. Brusman*, 303 Ga. App. 703, 710 (2)

---

[11] To remedy the prejudice resulting from evidence spoliation, a trial court is authorized to craft a solution that fits the facts; the court may (1) charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismiss the case; or (3) exclude testimony about the evidence. This is not an exhaustive list of sanctions a trial court may impose; rather, the trial court has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances.

(694 SE2d 667) (2010). Nor do we express any opinion on the outcome of the motion for summary judgment.

2. Defendants argue, however, that they were also entitled to summary judgment because IP surrendered the premises to White Electrical and that we should reverse the trial court's adverse ruling on this issue and affirm on this alternative basis. Although we agree that the issue of whether relevant evidence was spoliated is unrelated to the issue of contractual surrender, defendants' failure to file a cross-appeal from this adverse ruling means we cannot reach this issue. See OCGA § 5-6-38; *Truelove v. Buckley*, 318 Ga. App. 207, 212 (733 SE2d 499) (2012). Moreover, this issue stands separate not only from the issue of spoliation, but also from the other errors asserted by Bath in his enumerations of error in the main appeal. Thus, it does not come "within the exception that 'a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal.'" *Truelove*, 318 Ga. App. at 212. Accordingly, this issue is not properly before us, and we decline to consider it.

---

(Citations and punctuation omitted.) *Kitchens v. Brusman*, 303 Ga. App. 703, 709 (1) (694 SE2d 667) (2010).

14

*Judgment vacated and case remanded with direction. Barnes, P. J., and Mercier, J., concur.*