**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 21, 2018

# In the Court of Appeals of Georgia

A18A0720. NEFF v. MCGEE.

RAY, Judge.

Christal McGee sued Michael Neff and his law firm, the Law Offices of Michael Lawson Neff, P. C., (collectively, "Neff"), for defamation arising from an article Neff posted to his law firm's website and for statements he made to other media outlets. The statements related to the dangers of Snapchat's Speed Filter and an automobile collision that occurred when McGee was allegedly using the Speed Filter to capture a photo documenting her high speed. Neff's clients were injured in the collision. Neff filed a motion to strike or dismiss the complaint under Georgia's anti-SLAPP statute, OCGA § 9-11-11.1. The trial court denied the motion, and Neff filed the instant appeal. As set forth in more detail hereinbelow, we reverse.

On September 10, 2015, McGee crashed her car into the car driven by Wentworth Maynard. The Maynards hired Neff to represent them in litigation arising from the collision. In that action, the Maynards sued McGee and Snapchat, Inc., alleging that McGee was driving at an excessive speed as a result of her use of the Snapchat Speed Filter at the time of the collision.[1] Snapchat is an application made for mobile devices that allows users to take temporary photos and videos, also known as "Snaps," and share them with friends. Snapchat creates "Filters" that allow users to include captions, drawings, and graphic overlays on a user's photos or videos. One of these filters is a speedometer that shows the speed at which a user is moving and allows for that speed to be superimposed to a Snap before sending it out over the application (the "Speed Filter").

On November 24, 2015, Heather McCarty, one of McGee's passengers at the time of the collision, provided an affidavit to Neff. McCarty's affidavit stated, inter alia, the following:

---

[1] See *Maynard v. Snapchat, Inc.* __ Ga. App. __ (Case No. A18A0749, decided June 5, 2018).

I looked up and noticed that we seemed to be accelerating. I looked in the front and saw [McGee] holding her phone. The screen had a speed on it, which was about 80 m.p.h. and climbing. I asked [McGee] if her phone was keeping up with the speed of the car. [McGee] said it was. I told her I was pregnant and asked her to slow down. [McGee] responded and said that she was just trying to get the car to 100 m.p.h. to post it on Snapchat. She said "I'm about to post it." I began pleading with [McGee] to slow down. Just after I saw the speed of 113 m.p.h., a car pulled out of an apartment complex, and I screamed.

Soon after the collision, McGee did post a Snap, not of her speed as shown on her car's dashboard, but showing blood on her face, with the caption "Lucky to be alive" imposed on the photo.

As part of his investigation into the incident prior to filing suit, Neff hired an accident reconstructionist to examine the cars and the scene. In February 2016, the reconstructionist concluded in his report that McGee's car was traveling between 91 and 107 m.p.h. at the time of the collision. Based upon this report and McCarty's affidavit, the Maynards filed suit against Snapchat and McGee on April 20, 2016.

On or about April 26, 2016, Neff posted an article about the case on his firm's website, along with a link to the Complaint. The article was titled "Lawsuit filed against Snapchat for Distracted Driving[,]" and includes the following: a synopsis of

3

the incident, including the description of McGee's use of Snapchat while driving, a statement about the dangers of distracted driving, a description of the "[R]ise of Snapchat[,]" the public debate about the dangers of the Speed Filter, and a statement about the Maynards' lawsuit. Various news organizations also ran stories about the dangers of the Snapchat Speed Filter and referenced the Maynards' complaint. These articles cited to the Maynards' lawsuit and the article posted to Neff's law firm website.

On April 11, 2017, McGee sued Neff for defamation and related claims based on the article on the Neff website and other statements he made. In response, Neff then filed a motion to strike and to dismiss McGee's lawsuit, arguing that the article was conditionally privileged pursuant to OCGA § 51-5-7 (4), (7) and OCGA § 9-11-11.1, and as a result, that McGee's lawsuit was subject to dismissal pursuant to Georgia's anti-SLAPP statute. The trial court denied the motion to dismiss, and Neff filed the instant appeal.

We review de novo the trial court's denial of Neff's motion to dismiss. *Rogers v. Dupree*, 340 Ga. App. 811, 814 (2) (799 SE2d 1) (2017). Upon review of a trial court's denial of a motion to dismiss, "we construe the pleadings in the light most

4

favorable to the plaintiff with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) Id.

A "strategic lawsuit against public participation" (SLAPP action) is a lawsuit filed with the intent to silence and intimidate opponents or critics by overwhelming them with the cost of a legal defense until they abandon that opposition or criticism. *Rogers*, supra at 814 (2). The General Assembly enacted the anti-SLAPP statute "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their right to petition government for redress of grievances. The statute's stated purpose is to prevent a chilling of that right through the abuse of the judicial process." (Punctuation and footnotes omitted.) *Hindu Temple and Comm. Ctr. of the High Desert, Inc. v. Raghunathan*, 311 Ga. App. 109, 113 (714 SE2d 628) (2011).

The current version of the anti-SLAPP statute, OCGA § 9-11-11.1,[2] provides, in pertinent part, that

> A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

OCGA § 9-11-11.1 (b) (1). An act in furtherance of a person's right of petition or free speech includes, inter alia, any written or oral statement made before a judicial proceeding; in connection with an issue under consideration by a legislative or judicial body; or in connection with a public issue or an issue of public concern. OCGA § 9-11-11.1 (c) (1) - (4).

---

[2] OCGA § 9-11-11.1 was amended in 2016, effective July 1, 2016. See Laws 2016, Act 420, §2. The amendment expanded the scope of protected speech to include any conduct on a matter of public concern in furtherance of the right to petition, not just speech connected to an official proceeding (subsection (c) (4)), replaced the plaintiff's complaint verification requirement with a probability-of-success standard (subsection (b) (1)), and provided a right of direct appeal from the grant or denial of a motion to dismiss under the statute (subsection (e)).

Thus, Georgia's revised anti-SLAPP statute involves a two-step process for determining whether a claim is subject to being stricken. In the first step, the defendant bringing an anti-SLAPP motion to dismiss must make a prima facie showing that the plaintiff's suit is subject to OCGA § 9-11-11.1 by showing that the defendant's challenged acts were taken in furtherance of his or her constitutional rights of petition or free speech in connection with an issue of public concern as defined by the statute. OCGA § 9-11-11.1 (b) (1). The burden then shifts to the plaintiff to demonstrate that there is a "probability" that she will prevail on her claims at trial. OCGA § 9-11-11.1 (b) (1). "In making the determination as provided for in [OCGA § 9-11-11.1 (b) (1)], the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based[.]" OCGA § 9-11-11.1 (b) (2).

In the instant appeal, the parties do not contest that the procedural protections of the anti-SLAPP statute applies to the contested speech. However, Neff argues that the trial court erred in concluding that McGee had met her burden of establishing a probability that she would prevail on her claims for defamation.

1. Pretermitting whether the trial court erred in its determination that McGee had evidence that arguably suggests that the statements made by Neff in his article were false, which is an element of defamation,[3] we find that Neff's statements were conditionally privileged under OCGA § 51-5-7.

Under the anti-SLAPP statute, McGee must show that she has a probability of prevailing on her claims in order to survive Neff's motion to dismiss. OCGA § 9-11-11.1 (b) (1). Intertwined with McGee's probability of prevailing on her claim for defamation, which includes an examination of the falsity of the statements, is whether Neff carried his burden of proving that his statements were conditionally privileged as a matter of law. "A defendant who has made a statement that is defamatory may nevertheless avoid liability if the statement was privileged, absent a showing of actual malice." (Citation omitted.) *Smith,* 341 Ga. App. at 790 (2).

Georgia law deems certain categories of speech privileged, including "[s]tatements made in good faith as part of an act in furtherance of the person's or

---

[3] A defamation claim requires proof of four elements: "(1) a *false* and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citation and punctuation omitted; emphasis supplied.) *Smith v. DiFrancesco*, 341 Ga. App. 786, 787-788 (1) (802 SE2d 69) (2017).

8

entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of [OCGA §] 9-11-11.1[,]" and "[c]omments of counsel, fairly made, on the circumstances of a case in which she or she is involved and on the conduct of the parties in connection therewith." OCGA § 51-5-7 (4), (7). See also *Metzler v. Rowell*, 248 Ga. App. 596, 598-599 (1) (547 SE2d 311) (2001). "This privilege is conditional, rather than absolute, and can be waived if the privilege is used merely as a cloak for venting private malice." (Punctuation and footnote omitted.) *Smith v. Henry*, 276 Ga. App. 831, 832 (1) (625 SE2d 93) (2005) (applying former OCGA § 9-11-11.1).

In interpreting OCGA § 51-5-7 (4), we first consider the following expansive definition of protected speech as set forth in OCGA § 9-11-11.1 (c):

> As used in this Code section, the term "act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" shall include: (1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

9

proceeding authorized by law; (3) Any written or oral statement or writing or petition made in a place open to the public or a public form in connection with an issue of public interest or concern; or (4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

Neff's statements in the article and media interviews were both related to the complaint that his clients filed against McGee and Snapchat, and were in connection with an issue of public concern, that is, whether Snapchat's Speed Filter is unsafe. See OCGA § 51-5-7 (4), (7). For Neff to establish privilege in this context, he must show that his statements were made with "good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons." (Punctuation and footnote omitted.) *Smith*, 276 Ga. App. at 832 (1). We will consider these in turn.

(a) *Good Faith.* The evidence Neff presented in support of his motion to strike demonstrated that he published the article to his law firm website and participated in media interviews in a good faith effort to get Snapchat to address the dangers associated with its Speed Filter.

10

Statements are deemed to have not been made in good faith, but rather with malice, if the evidence shows "in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Citation and punctuation omitted.) *Fine v. Communication Trends, Inc.*, 305 Ga. App. 298, 304 (1) (b) (699 SE2d 623) (2010). See also *Smith,* 276 Ga. App. at 832-833 (1) (evidence that the defendant believed his statements to be true at the time they were made was evidence of good faith). Neff argues that he acted in good faith at the time he published the article to his law firm's website because he relied upon the police report, the report from the accident reconstructionist and the verified affidavit of Heather McCarty. This evidence was known to Neff prior to the publication of his article on April 26, 2016. In its ruling that "[t]here is evidence from which a jury could find that some of [the statements in the article] were false," the trial court cited to affidavits signed *after* the publication of the article. This, and other evidence cited to by McGee that was not known to Neff until after the publication of the article, do not factor into his good faith at the time of publication.

The only other evidence Neff had *at the time he published his article* were statements obtained by the police from the other passengers in McGee's car. The statements in the police report by two of the passengers in McGee's car did not deny

11

McGee's use of Snapchat. One of these statements was silent as to McGee's speed, and the other stated that she had been traveling at 60-65 m.p.h. A third statement, by Heather McCarty, was signed and stated that McGee was going "a little over 110 m.p.h." at the time of the accident.[4] To the extent that the trial court determined that Neff did not act in good faith because of affidavits signed *after* the article was published, it erred. See *Fine*, supra at 303-305 (1) (b). See also *Smith,* 276 Ga. App. at 832-833 (1) (evidence presented by defendant in support of his motion for summary judgment, that he spoke at a board of commissioners meeting as a concerned citizen, showed that he believed his comments were true sufficed to evidence good faith).

Accordingly, we conclude that Neff's statements in his published article and cited in media statements were made in good faith.

(b) *An interest to be upheld.* Neff's affidavit states that the interest he sought to be upheld in publishing the article to his website "was to bring the allegations of the complaint to the public's attention so that other's [sic] would realize the dangers

---

[4] We recognize that unsworn and unsigned statements made to police are admissible and competent evidence. However, the fact remains that the statement given by McCarty to the police was further corroborated by her subsequent affidavit under oath, wihch would have provided Neff greater confidence into the facts included therein.

12

of Snapchat's speed filter, particularly as used, predictably, by teen-age drivers like McGee." He further averred that he filed the complaint against McGee after researching Snapchat's Speed Filter and discussing his fears that his family could likewise be injured by someone speeding to use the Speed Filter to post on Snapchat. See *Harkins v. Atlanta Humane Society*, 273 Ga. App. 489, 490-491 (618 SE2d 16) (2005) (statements made during a TV news broadcast were privileged where defendant believed her statements could influence or persuade government officials and the public at large to correct a problem); *Fine*, supra at 303-304 (1) (b) (letter by company notifying its clients of non-compete lawsuit against former employee was sent in good faith because company's president testified to business reasons for sending the letter, despite "conflicting evidence" as to motive). We find that Neff's statements were made with a legitimate interest to be upheld.

(c) *Statement properly limited in scope.* Each of Neff's challenged statements regarded the use and effect of Snapchat's Speed Filter. Neff's article focused on the dangers of the Speed Filter, and only mentioned McGee based on her role as the distracted driver in the crash, her alleged use of Snapchat both before and after the accident, and the Maynards' complaint against her. This was sufficiently limited in scope. See *Harkins*, 273 Ga. App. at 490-491.

13

(d) *Statements made on a proper occasion.* Because Neff made each of his statements in the days after the Maynards' complaint against McGee and Snapchat was filed, they were made on a proper occasion. *Smith,* 276 Ga. App. at 832 (1).

(d) *Publication to proper persons.* The Speed Filter's dangers could affect any person riding on public roadways, including individuals like the Maynards. Thus, the public at large was the proper audience for warnings related to the Speed Filter. See *Harkins*, 273 Ga. App. at 490-491. Although McGee argues that there is evidence which shows that McGee was *not* using Snapchat at the time of the collision, any evidence supporting such a conclusion was not known to Neff at the time of publication. At the time he published the article, Neff had an affidavit from Heather McCarty stating that McGee had been utilizing the Snapchat Speed Filter at the time of the collision.

Accordingly, Neff has made a prima facie showing of conditional privilege.

2. Neff next argues that the trial court erred in concluding that a jury question exists as to whether he had a malicious intent when he posted the article to his website. We agree.

"Proof that the defendant acted with actual malice in making the statement defeats the defense of privilege." (Citation and punctuation omitted.) *Fine*, supra at

14

304 (1) (b). "[I]f the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." OCGA § 51-5-9. "Malice to avoid qualified privilege must be actual and with evil intent." (Citation and punctuation omitted.) *Fine*, supra at 303-304 (1) (b). To prove actual malice, McGee was required to show that Neff knew that the statements in his article were false or published the statements with reckless disregard of the truth. See *Smith*, 276 Ga. App. at 833 (1). "Unsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice. Rather, the evidence must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Citation and punctuation omitted.) *Fine*, supra at 304 (1) (b).

McGee argues that the statements made in the police report by the other passengers in the vehicle at the time of the accident should have caused Neff to entertain serious doubts as to the truth of his statements that McGee was using the Snapchat Speed Filter and was speeding at the time of the wreck. We are unconvinced.

15

Henry Williams, a passenger in the car, provided a statement in the police report that did not address whether McGee was speeding or using her phone at the time of the accident. Kaylan Henderson, another passenger, provided a statement that McGee was on her phone at the time of the accident, and that she believed the McGee's car was traveling 60-65 m.p.h at the time of the collision. Heather McCarty's police report statement states that McGee was "going a little over 100 mph" when the accident occurred. McCarty subsequently provided a notarized affidavit to Neff prior to the publication of his article which stated that McGee was speeding while using Snapchat's Speed Filter. McCarty's estimation of the speed at which McGee was traveling was confirmed by the report prepared by the accident reconstructionist. Other evidence that McGee contends should have provided Neff with a serious doubt as to the truth of his statements was also provided *after* the article was published to his law firm website.

McGee has not pointed to any evidence of actual malice in the record, and "conclusory allegations by the plaintiff of conspiracy, malice, and defamation are insufficient in the absence of substantiating facts or circumstances to raise a material issue for trial. Thus, the trial court erred" by denying Neff's motion to strike or

dismiss McGee's claims pursuant to Georgia's anti-SLAPP statute. *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 818 (1) (c) (iii) (708 SE2d 672) (2011).

As set forth above, McGee cannot demonstrate a probability that she will prevail on her defamation claim because Neff has made a prima facie showing of conditional privilege. OCGA § 9-11-11.1 (b) (1). Accordingly, we reverse the trial court's denial of Neff's motion to dismiss or to strike pursuant to Georgia's anti-SLAPP statute.

*Judgment reversed. McFadden, P.J., and Rickman, J., concur.*