**October 20, 2023**

# In the Court of Appeals of Georgia

A23A0863. MATTHEWS v. OSKOUEI.

MARKLE, Judge.

Dr. Armin Oskouei sued defense attorney Zachary Matthews for libel and slander based on certain statements Matthews made to two opposing counsel regarding a cease and desist order issued by the Georgia Department of Community Health ("the Department"), which prohibited Oskouei's surgery center from performing orthopedic surgeries. Matthews moved to strike the complaint under Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, contending that his statements were protected speech and, because the statements were privileged, Oskouei could not show a probability of prevailing on the claims. Although the trial court agreed that Matthews's statements amounted to protected speech, it nevertheless denied the motion, finding that there was a factual question as to whether the statements were

privileged. Matthews now appeals. We conclude that the statements were privileged as a matter of law, and therefore the trial court erred by denying Matthews's motion to strike the complaint under OCGA § 9-11-11.1. We therefore reverse the trial court, and remand the case for proceedings consistent with this opinion.

The record reflects that Oskouei is the sole owner of a medical practice, Ortho Sport & Spine Physicians, LLC ("Ortho Sport"), and the practice's affiliated ambulatory surgery center, Orthopedic Surgery Center of Sandy Springs ("the surgery center"). In January 2021, the Department issued a cease and desist order, prohibiting the surgery center from performing orthopedic surgeries because it found that Oskouei did not have the requisite board certification in orthopedic surgery to justify the center's exemption from the certificate of need program.

The surgery center filed a timely administrative appeal of the cease and desist order, but it was affirmed by both an administrative hearing officer and the agency Commissioner. In November 2022, after the surgery center petitioned the superior court for judicial review of the final agency order, the court entered a consent order, granting the petition and vacating the cease and desist order.

Matthews is a defense attorney, who was representing clients adverse to parties that had been treated at Ortho Sport and the surgery center. As a result of his

investigation and discovery efforts regarding the medical bills of adversarial parties in his clients' cases, Matthews became aware of the cease and desist order, and developed evidence that the surgery center was still performing orthopedic surgeries despite the order.

In March 2021, Matthews sent an e-mail to his opposing counsel, David Byrd, to discuss settlement of a pending suit brought by Byrd's client. Matthews had previously sent Byrd a copy of the cease and desist letter. In the e-mail to Byrd, Matthews wrote:

> As I advised, Ortho Sport & Spine have (sic) been sent a cease-and-desist order for illegally operating what appears to be the very same facility at which your client had treatment. Some or all of those bills . . . appear to have been illegally issued. . . . In the case of Ortho Sport, Dr. Oskouei made misrepresentations of his board certification to even operate the [surgery center] in the first place. Accordingly, it should never have been approved, and the [Department] is presently taking steps to rectify that. At a minimum this situation raises reasonable questions about whether the [surgery center's] facility fee liens would be *collectible*, as they appear to arise out of fraud.

In her March 2022 affidavit, Stella Adhisurya, Matthews's opposing counsel in another such claim against one of his clients, recounted certain statements

Matthews made during a May 2021 phone call regarding a discovery dispute. Specifically, Adhisurya recalled that Matthews told her Oskouei was performing illegal surgeries; equated Oskouei to a "back alley" surgeon or one who was "doing surgeries in a hotel"; referred to Oskouei as "bad news"; and cautioned her against sending clients to Oskouei for treatment.

Based on these two communications, Oskouei sued Matthews for defamation, slander, and libel. Matthews moved to strike the complaint under the anti-SLAPP statute, and for attorney fees pursuant to OCGA § 9-11-11.1 (b.1). The trial court denied the motion, and this appeal followed.

On appeal, Matthews raises several related enumerations of error, including the trial court's application of allegedly improper standards in its analysis; its failure to determine the statements were not defamatory because they were based in fact; and its failure to find the statements were privileged. Because we conclude that Oskouei cannot prevail on his defamation claims given that Matthews's statements were conditionally privileged under OCGA § 51-5-7, we reverse the trial court's decision on this ground and, as a result, find it is unnecessary to address Matthews's other claims of error. See *Neff v. McGee*, 346 Ga. App. 522, 525 (1) (816 SE2d 486) (2018)

4

(pretermitting the issue of the truthfulness of the subject statements, and only addressing conditional privilege). We thus remand the case to the trial court to consider Matthews's request for attorney fees, pursuant to OCGA § 9-11-11.1 (b.1).[1]

(a) The anti-SLAPP framework.

As we have explained,

[a] "SLAPP," or "Strategic Lawsuit Against Public Participation," is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation. The anti-SLAPP statute allows a defendant to make a motion to strike such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense. A trial court's ruling on an anti-SLAPP motion to strike is subject to de novo review, and the pleadings and affidavits submitted by the parties are considered in the light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Johnson v. Cordtz*, 366 Ga. App. 87 (878 SE2d 603) (2022); see OCGA § 9-11-11.1 (b) (2) (in determining whether a claim should

---

[1] OCGA § 9-11-11.1 (b.1) provides, in pertinent part: "a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case."

be struck, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based"). However, we construe the statute broadly in furtherance of the General Assembly's declared purpose "to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." OCGA § 9-11-11.1 (a); *Barnwell v. Trivedi*, 366 Ga. App. 168, 170 (881 SE2d 16) (2022).

Whether a claim should be struck under the anti-SLAPP statute involves a two-part test.[2]

> First, the court must decide whether the party filing the anti-SLAPP motion has made a threshold showing that the challenged claim is one "arising from" protected activity. If so, the court must decide whether

---

[2] OCGA § 9-11-11.1 (b) (1) provides:

A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." But while viewing the evidence in this light, the court must also take into account the substantive evidentiary and legal standards that apply to the case.

*Johnson*, 366 Ga. App. at 90 (1); *Barnwell*, 366 Ga. App. at 170; see also OCGA § 9-11-11.1 (b) (1).

(i) Protected speech.

With regard to the first prong, and as is relevant to this appeal, the statute includes in its definition of a protected activity "[a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." OCGA § 9-11-11.1 (c) (2). Here, the trial court found that Matthews's statements were in connection with an order of an executive agency, thus satisfying the first prong of the anti-SLAPP analysis. OCGA § 9-11-11.1 (b) (1), (c) (2). Because Oskouei did not file a cross-appeal as to this issue, we do not review this

7

finding in this appeal.[3] See *Bath v. Intl. Paper Co.*, 343 Ga. App. 324, 331 (2) (807 SE2d 64) (2017); OCGA § 5-6-38 (a).

(ii) Probability of prevailing.

We thus turn to the second prong of the test, which requires us to evaluate the viability of Oskouei's claims of defamation by libel and slander. *Barnwell*, 366 Ga. App. at 172; OCGA § 9-11-11.1 (b) (1).

> The second step of the anti-SLAPP analysis requires a determination as to whether the plaintiff has established that there is a probability that he . . . will prevail on the claim. To meet this burden, [Oskouei] must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e.,

---

[3] Oskouei contends we are obliged to review the trial court's analysis as to this first prong as it falls "within the exception that a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal." *Bath v. Intl. Paper Co.*, 343 Ga. App. 324, 331 (2) (807 SE2d 64) (2017). We are unpersuaded. Whether Oskouei has satisfied his burden to show there is a likelihood he would prevail on his claims is a separate determination from whether Matthews's speech was protected. OCGA § 9-11-11.1 (b) (1); see also *Barnwell*, 366 Ga. App. at 172 (pretermitting whether the speech at issue was protected and addressing only whether Appellant was likely to prevail on his underlying claims). As such, Oskouei failed to preserve this issue for appeal, and we decline to review it.

that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken.

(Citation and punctuation omitted.) *Johnson*, 366 Ga. App. at 91 (1).

As our Supreme Court has explained,

[f]or purposes of this inquiry, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. In making this assessment, it is the court's responsibility to accept as true the evidence favorable to the plaintiff. In this regard, the merits of the plaintiff's claim are evaluated using a summary-judgment-like procedure at an early stage of the litigation.

(Citations and punctuation omitted.) *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 653 (1) (c) (864 SE2d 422) (2021).

With these standards in mind, we next consider the elements of a viable defamation claim: "(1) a false and defamatory statement concerning the plaintiff; (2) an *unprivileged* communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citation and punctuation omitted; emphasis supplied.)

9

*Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 129-130 (1) (670 SE2d 818) (2008); accord *Grace v. Lowery*, 359 Ga. App. 881, 883 (860 SE2d 159) (2021). For the reasons set forth below, we conclude that Oskouei cannot show a probability of prevailing on his claims because Matthews's statements were privileged.

(b) Conditional privilege.

Matthews contends that the defamation claims must fail because his statements to Byrd and Adhisurya were conditionally privileged under OCGA § 51-5-7 (2), (3), (4), and (7). We agree.

"[A] defendant who has made a statement that is defamatory may nevertheless avoid liability if the statement was privileged, absent a showing of actual malice." *Smith v. DiFrancesco*, 341 Ga. App. 786, 790 (2) (802 SE2d 69) (2017); *Saye*, 295 Ga. App. at 131 (1) (a) ("When the privilege is conditional, actual malice will bring about liability.") (citation and punctuation omitted). Although the issue of conditional privilege is typically a question for the jury, we have, nevertheless, found the privilege applies as a matter of law in clear and certain cases. *Smith*, 341 Ga. App. at 790 (2) ("The question of conditional privilege is typically for the jury."); see, e.g., *Neff*, 346 Ga. App. at 528 (1) (e) (concluding defendant established prima facie showing of conditional privilege); *Community Newspaper Holdings v. King*, 299 Ga.

10

App. 267, 270 (1) (682 SE2d 346) (2009) ("While generally the issue of whether privilege exists is for the jury, summary judgment is proper where defendants establish as a matter of law that they made privileged statements.") (citations and punctuation omitted); *White v. Hardegree*, 190 Ga. App. 275, 277 (2) (378 SE2d 877) (1989).

OCGA § 51-5-7 sets out the types of communications that are privileged. We find OCGA § 51-5-7 (7) particularly relevant to the case at hand. Under that provision, "[c]omments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith" are deemed privileged. Id. Here, Matthews's statements to Byrd and Adhisurya were made in the course of pending litigation, and concerned the relative settlement values of the claims of opposing counsels' clients.[4] Thus, his statements fit squarely within this particular privilege. See *White*, 190 Ga. App. at 277 (2) (noting that the comments of counsel were privileged under OCGA § 51-5-7 (6), which mirrored the

---

[4] Regardless of whether the privilege applies — although we conclude it does — we have found that a defamation claim is not actionable against an attorney who "was expressing his legal opinion about the situation of [a litigant's] claims and the parties' respective liabilities in relation thereto." *White*, 190 Ga. App. at 277 (2). Moreover, we decline to burden trial courts with a duty to police ostensibly hyperbolic or inventive language between opposing counsel in their professional discourse.

11

language of present OCGA § 51-7-7 (7)); compare *Sparks v. Ellis*, 205 Ga. App. 263, 267 (2) (421 SE2d 758) (1992) (citing to former OCGA § 51-5-7 (6) and noting that the privilege does not extend to comments made by anyone other than counsel).

To show that his comments were privileged in this context, Matthews must establish that "(a) [he] acted in good faith; (b) in connection with an interest to be upheld; (c) the statement was properly limited in its scope and occasion; and (d) publication was made to proper persons." *Smith*, 341 Ga. App. at 790 (2); *Neff*, 346 Ga. App. at 526 (1).

(i) Good faith.

"Statements are deemed to have not been made in good faith, but rather with malice, if the evidence shows in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Citation and punctuation omitted.) *Neff*, 346 Ga. App. at 527 (1) (a). There is no evidence of any such doubts here. Matthews made the statements to Byrd and Adhisurya in March and May 2021, respectively. Matthews relied on the cease and desist order, which clearly ordered the clinic to stop performing orthopedic surgeries. This order remained in place, and was affirmed by both an administrative hearing officer and the agency Commissioner, and was not reversed until a consent order was entered in the superior

12

court on judicial review, in November 2022. As such, at the time Matthews made the statements to opposing counsel, he had a good faith basis for making them.[5] See *Id.* (rejecting evidence not known at the time of the publication of the alleged defamatory statements as a factor in determining defendant's good faith intent); see also *Smith v. Henry*, 276 Ga. App. 831, 832 (1) (625 SE2d 93) (2005) (Defendant's comments against public official were based on conversations with the official and others working in her office, "and he believed his comments were true. This evidenced good faith.").

(ii) Other factors.

Here, because Matthews's was engaging in the representation of his clients when he made the statements, we conclude, as a matter of law, that he had a legitimate interest to uphold. *See Neff*, 346 Ga. App. at 528 (1) (b). Furthermore, the statements were properly limited in scope and occasion, and published only to proper persons, as Matthews made them during private settlement communications with

---

[5] To the extent that Oskouei argues that there is some evidence that Matthew acted in bad faith because the cease and desist order merely directed the clinic — and not Oskouei, personally — to stop performing surgeries, we are unpersuaded. The order notes that the clinic was wholly owned by Oskouei, and that "there is no evidence of record that he is board certified in orthopedic surgery." As such, Oskouei is clearly included in its prohibition.

opposing counsel. See id. at 526 (1), 528 (1) (c), (d) and (e). Accordingly, Matthews has made a prima facie showing that the statements at issue were conditionally privileged. Id. at 528 (1) (e).

(iii) Absence of actual malice.

To defeat Matthews's privilege defense, Oskouei bears the burden to show that Matthews acted with actual malice. *Neff*, 346 Ga. App. at 529 (2); see also *Saye*, 295 Ga. App. at 133 (1) (a) (plaintiff bears the burden of proving malice to defeat defendant's claim of privilege); OCGA § 51-5-9 ("In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action."). To meet this burden, Oskouei was required to show that Matthews knew that his statements were false or that he made them with a reckless disregard for the truth. Importantly, "[u]nsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice. Rather, the evidence must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Citation and punctuation omitted.) *Neff*, 346 Ga. App. at 529 (2); *Saye*, 295 Ga. App. at 133 (1)

14

(a); *Fine v. Communication Trends*, 305 Ga. App. 298, 304 (1) (b) (699 SE2d 623) (2010).

But, here, Oskouei points to no such clear and convincing evidence that Matthews knew, at the time he made the statements, that either Oskouei's credentials — in so far as they were represented to the Department as reflected in the cease and desist order — were unblemished or that the surgical center was not illegally performing surgeries after the order issued.[6] As such, he has not met his burden to show actual malice, and thus has failed to defeat Matthews's claim of privilege. See *Neff,* 346 Ga. App. at 529 (2); *Fine*, 305 Ga. App. at 304 (1) (b) (letter that

---

[6] To the extent that Oskouei claims that Matthews should have known the surgery center was permitted to continue performing surgeries during the pendency of the administrative appeal process, this claim is pure conjecture and, as such, is insufficient to show that Matthews was motivated by actual malice. *Neff*, 346 Ga. App. at 529 (2). Moreover, we note that the agency regulations on which Oskouei relies do not establish indisputably that a facility may continue to operate once a cease and desist order issues. See Ga. Comp. R. & Regs., r. 111-2-2-.05 (c) (establishing the finality of an agency order for purposes of determining when an applicant may reapply for a certificate of need after revocation); Ga. Comp. R. & Regs., r. 111-2-2-.10 (6) (setting forth procedures for administrative appeal of an agency decision, but making no mention of whether facility can continue to operate during the process); but see Ga. Comp. R. & Regs., r. 111-2-2-.05 (b) ("In the event that there is sufficient evidence to justify revocation of a Certificate, the Department shall provide written notification to the holder, *which shall be effective as of the postmark date on the notification letter*.") (emphasis supplied).

15

"substantially set forth the terms" of a restraining order that were favorable to defendants' interests, but omitted that trial court had not yet ruled on merits of claim and that the order merely preserved the status quo while litigation proceeded, was not grounds to establish actual malice).

For these reasons, the trial court erred in finding there was a probability Oskouei would prevail on his defamation claims. We therefore reverse its judgment, and remand the case to the trial court to consider Matthews's request for attorney fees under OCGA § 9-11-11.1 (b.1).

*Judgment reversed and case remanded with direction. McFadden, P. J., and Brown, J., concur.*