**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 27, 2025

# In the Court of Appeals of Georgia

A25A0111. POTTS v. RICHARDSON et al.

DAVIS, Judge.

In this defamation action between two opposing counsels in a personal injury lawsuit, James Hugh Potts, II, appeals from the trial court's order granting Morris Wade Richardson and Richardson Clement P.C.'s (collectively "Defendants") motion to dismiss under Georgia's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1. On appeal, Potts argues that the trial court erred by (1) determining that he did not factually and legally state a claim for defamation; (2) determining that the statements in Richardson's email were true; (3) concluding that Richardson's email was privileged; and (4) concluding that he did not prove that Richardson used a privilege in bad faith to vent private malice.

For the reasons set forth below, we affirm the trial court's order granting the motion to dismiss.

"This Court reviews a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff (as the non-moving party)." (Citation and punctuation omitted.) *Giraldi v. Bowen*, 374 Ga. App. 347, 348 (912 SE2d 724) (2025).

So viewed, the record shows that Potts serves as counsel for the plaintiff in a contentious personal injury suit in Fulton County State Court against CSX Transportation Inc. and CSX Intermodal Terminals, Inc., who are represented by Richardson and his law firm. During that litigation, the trial court entered an order granting Potts' consent motion to file a certain manual under seal, prohibiting access to the document except by court order or agreement of the parties. According to Richardson, on September 7, 2023, he received an electronic notification from the electronic filing system that Potts filed the manual. Richardson averred that in his 36 years of experience as a trial lawyer, documents which are filed under seal bear some mark or indication noting that the document was filed under seal, and the manual in this case did not contain any such mark or indication. He also averred that documents

2

filed under seal are delivered to the court in a sealed envelope and that the electronic filing system did not indicate that the manual was delivered to the court in that manner. Based on these observations, Richardson stated that he "believed in good faith that, by filing the [manual] electronically, [Potts] had not filed it under seal as agreed by the parties to the [lawsuit] and as ordered by the judge presiding over the [lawsuit]." The following emails were subsequently exchanged between Potts and Richardson:

> RICHARDSON: James, it appears you did not file the Keunz manual under seal as agreed and as allowed by the [c]ourt, and it appears you are in violation of the protective order by making a public filing. I am copying Keunz's attorney, so he is aware.

> POTTS: I disagree. It was filed under seal. All my best.

> POTTS: Mr. Richardson, Your email from September 7, 2023, is false. I did file the [manual] under seal. Retract your false statement publicly and quickly - within 7 days as mandated by OCGA § 51-5-11. If not, I'll seek legal recourse against you and your firm. All my best.

> RICHARDSON: James, as stated in my email, it appeared from the notice we received below that the manual was not filed under seal. If you review the notice and the attachment, no where does it indicate that the document has been filed under seal. In my experience, documents filed

under seal have some notice or indication that they are under seal and what we received had no such indication. Nevertheless, if you say you did file it under seal and it is simply not indicated on what was served on us below, then I am pleased to receive your confirmation that the document was in fact filed under seal. Thank you.

POTTS: Mr. Richardson, You've neither retracted your knowing false statements nor apologized for your misconduct. Your email confirms it. Your stance is clear. Choose: acknowledge our libel suit or have it personally served. All my best.

RICHARDSON: James, your contentions below are false and without factual or legal support. As you should know, the email communication you reference is absolutely privileged under OCGA § 51-5-7 (2), (6), and (7) and cannot form the basis of a libel claim. Any effort on your part to assert one will be vigorously defended and upon dismissal, attorneys' fees and costs associated with such action will be pursued, including any other remedies that may be available under Georgia law and the Georgia Rules of Professional Conduct.[1]

Potts subsequently filed suit against the Defendants and John Does 1-10, asserting claims for defamation/libel, trade libel, service disparagement, negligence,

---

[1] In subsequent proceedings in the underlying action, the trial court stated that it reviewed the docket and discovered that the manual was, in fact, filed under seal.

and false light/invasion of privacy, and he sought regular and punitive damages. The Defendants answered the complaint and filed a motion to dismiss under the anti-SLAPP statute, arguing that the email was written in connection to issues under review by a judicial body and Potts could not show a probability that he could succeed on his claims because the statements in the email were factually and legally correct. The Defendants also argued that they were entitled to attorney fees under OCGA § 9-11-11.1 (b.1). Potts opposed the motion and argued that he could succeed on his defamation and negligence claims because Richardson's statements were false and not privileged.[2] After a hearing, the trial court entered an order granting the motion to dismiss. The trial court first determined that the statements were made in connection with an issue under consideration by a judicial body and that Potts' claims were therefore subject to the anti-SLAPP statute. The trial court then determined that Potts could not show a possibility that he could succeed on his claims because the statements in the email were true and were privileged under OCGA § 51-5-7 (1), (3), (5), and (7), and Potts did not meet his burden to show that the privileges did not apply because he could not show that the Defendants acted in bad faith to vent private

[2] Potts, however, agreed that his claims for false light/invasion of privacy, trade libel, and service disparagement should be dismissed.

malice.[3] The trial court further determined that the Defendants were entitled to attorney fees under OCGA § 9-11-11.1 (b.1).[4] This appeal followed.

1. In related enumerations of error, Potts argues that the trial court erred by determining that he cannot prevail on his libel claim because the statements in Richardson's email were false and were not privileged under OCGA § 51-5-7 (1), (3), (5), and (7). We conclude that the trial court properly determined that Potts failed to show a probability that he could succeed on his claim.

"A SLAPP, or Strategic Lawsuit Against Public Participation, is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation." (Citation and punctuation omitted.) *Giraldi*, supra, 374 Ga. App. at 347. "Georgia's anti-SLAPP statute, OCGA

---

[3] The trial court also determined that Potts' claims for negligence and malice were only potential standards of liability for defamation because Potts' complaint does not contain separate claims independent from the communications at issue. Potts does not challenge this ruling on appeal.

[4] Although the trial court reserved ruling on the amount of attorney fees to be awarded to the Defendants, this has no bearing on our jurisdiction over this matter. See OCGA § 5-6-34 (a) (13) (authorizing direct appeals from "[a]ll judgments or orders entered pursuant to Code Section 9-11-11.1.").

§ 9-11-11.1, allows a defendant to move to strike or dismiss such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense." (Citation and punctuation omitted.) Id. at 347-348. The purpose of the statute is "to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." (Citation omitted.) Id. at 348.

"The text of OCGA § 9-11-11.1 (b) (1) makes clear that the analysis of an anti-SLAPP motion involves two steps." *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 261 (2) (b) (830 SE2d 119) (2019). "First, the court must decide whether the party filing the anti-SLAPP motion (usually, the defendant) has made a threshold showing that the challenged claim is one arising from protected activity." (Punctuation omitted.) Id. at 261-262 (2) (b). Here, Potts agrees that the Defendants made the threshold showing that the challenged claims arise from protected activity, and so we proceed to the second step of the analysis which is "whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim[s]." (Citation and punctuation omitted.) Id. at 262 (2) (b). "To meet this burden, the plaintiff must demonstrate that the complaint is both legally sufficient and supported

by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Citation and punctuation omitted.) Id. "The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law." (Citation omitted.) Id. "Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken." (Citation, punctuation, and emphasis omitted.) Id. at 262-263 (2) (b). With these principles is mind, we turn to Potts' claims.

Libel is a type of defamatory statement and is therefore considered under the same umbrella as defamation.[5] *Boley v. A-1 Horton's Moving Svc. Inc.*, 373 Ga. App. 574, 578 (2) n.4 (907 SE2d 372) (2024). A claim for defamation has four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of

---

[5] See OCGA § 51-5-1 (a) ("A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.").

8

special harm." (Citation omitted.) *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650 (1) (b) (864 SE2d 422) (2021). As to the second element, "Georgia law recognizes two kinds of privileged communications: absolute and conditional." *Oskouei v. Matthews*, 321 Ga. 1, 8 (2) (b) (912 SE2d 651) (2025). "Absolutely privileged communications, such as allegations contained in pleadings filed in court, cannot form the basis for a defamation action." Id.; see also OCGA § 51-5-8 ("All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous."). On the other hand, OCGA § 51-5-7 provides a list of conditionally privileged communications which are actionable upon a showing of malice. *RCO Legal, P.S., Inc. v. Johnson*, 347 Ga. App. 661, 669 (1) (c) (820 SE2d 491) (2018). Among the list of conditionally privileged statements are "[c]omments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith." OCGA § 51-5-7 (7). The defendant bears the burden of establishing that a conditional privilege applies by showing "good faith, an interest

9

to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons." (Citation and punctuation omitted.) *Oskouei*, supra, 321 Ga. at 9 (2) (b). "[W]hen a defendant makes a prima facie showing that an allegedly defamatory statement is conditionally privileged, the burden shifts to the plaintiff to make an additional showing of proof to overcome the privilege defense." Id. at 8 (2) (b). "The plaintiff can do so by proving that the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted." Id. at 9 (2) (b).

Here, as stated above, Potts and the Defendants serve as opposing counsel to parties in a personal injury action. The trial court entered an order granting Potts' consent motion to file a ceratin manual under seal and prohibited access to the document except by court order or agreement of the parties. Richardson stated that based on the manner in which the manual was filed, he did not believe that it was filed under seal as ordered by the court, and his statements in the email alerted Potts of the potential filing issues.

In light of the foregoing discussion, we conclude that the trial court did not err by determining that Richardson's statements were privileged under OCGA § 51-5-7

(7). Again, Richardson and his law firm are counsel for CSX Transportation and CSX Intermodal Terminals Inc. in their dispute against Tyrik Ball, who is represented by Potts, and the comments were made in reference to filing issues undertaken by Potts in that litigation. Thus, Richardson's comments were clearly made in connection to a matter in which he and his firm were involved, and they only concerned Potts' conduct in connection with the electronic filing issues. Moreover, the Defendants carried their burden of establishing that the privilege applies. Specifically, Richardson averred that in his 36 years of experience as a trial lawyer, documents which are filed under seal have some marking to indicate that they were filed under seal, and the manual was not so marked. He also averred that the electronic filing notice that he received did not indicate that the manual was filed under seal and that for these reasons, he did not believe that the manual was filed under seal as ordered by the court. Thus, although Potts contends that Richardson cannot demonstrate good faith because he did not "bother[] to look for himself" to determine if the manual was filed under seal, we conclude that Richardson's statements were made in good faith. See *Smith v. Henry*, 276 Ga. App. 831, 832-833 (1) (625 SE2d 93) (2005), overruled in part on other grounds, *Oskouei*, supra, 321 Ga. at 26 (4) (2025) (evidence that the

defendant believed his statements were true at the time they were made was sufficient to show good faith). Additionally, Richardson's statements were made on the same day after the manual was electronically filed and only sought to protect the confidentiality of the manual. The only other parties included on the email correspondences were the parties involved in the action and the counsel for the party that produced the manual. Thus, the Defendants also established that the statements were made to uphold an interest, were limited in their scope, made on a proper occasion, and were published to proper persons such that the conditional privilege in OCGA § 51-5-7 (7) applies. See *Neff v. McGee*, 346 Ga. App. 522, 525-528 (1) (816 SE2d 486) (2018), overruled in part on other grounds, *Oskouei*, supra, 321 Ga. at 26 (4) (2025) (attorney's statements in an article about a case were privileged under OCGA § 51-5-7 (7) because the statements were related to the litigation and the record showed that the statements were made in good faith in reliance on a police report, the interest sought to be upheld was the public's attention to the matter, the statements were limited in scope and made days after the complaint, and were made to the public, who was a proper audience).

Furthermore, the trial court properly concluded that Potts cannot show that the privilege was used merely as a cloak for venting private malice. See *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 333 (8) (514 SE2d 669) (1999) ("The remedy for misuse of a conditional privilege is OCGA § 51-5-9. If the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action.") (citation omitted). The Supreme Court of Georgia has recently explained that to overcome a conditional privilege, a plaintiff must establish by a preponderance of the evidence "that the defendant used the privilege as a pretense, such that the allegedly defamatory statement was not made for one of the bona fide purposes listed in OCGA § 51-5-7 but was instead made with private malice, meaning with ill will toward the plaintiff or with an intent to injure him." *Oskouei*, supra, 321 Ga. at 26-27 (4).[6] To satisfy this burden, Potts points to documents that Richardson filed in the underlying action in which Richardson sought protective orders, remedies for discovery issues, and sanctions for what he contended were violations of court orders. But we have not uncovered anything in those documents to show that Richardson

---

[6] The Supreme Court of Georgia rendered its decision in *Oskouie* after the trial court issued its ruling and after the parties filed their appellate briefs with this Court.

made his statements with ill will towards Potts or with intent to injure him so as to preclude the application of the privilege in OCGA § 51-5-7 (7). The documents merely show the Defendants' assertive posture in protecting their interests and the interests of their clients. Hence, in the absence of evidence that Richardson made his statements with ill will or with intent to injure Potts, the trial court did not err in its determination that Potts failed to demonstrate that the privilege was used merely as a cloak for venting private malice.[7] Consequently, the trial court did not err by determining that Potts did not show a probability that he could succeed on his libel claims, and for all of the reasons stated above, the trial court properly granted the Defendants' motion to dismiss under the anti-SLAPP statute.

2. We next consider, in the exercise of our inherent power, whether a penalty for a frivolous appeal is warranted. For the reasons set forth below, we conclude that such a penalty is appropriate.

Court of Appeals Rule 7 (e) (2) states in part: "The panel of the Court ruling on a case, with or without motion, may by majority vote to impose a penalty not to

---

[7] In light of this conclusion, it is unnecessary for us to address Potts' claims that the trial court erred by determining that Richardson's statements were true and that the statements were privileged under OCGA § 51-5-7 (1), (3), and (5).

14

exceed $2,500 against any party and/or a party's counsel in any civil case in which there is a direct appeal . . . that is determined to be frivolous." "An appeal is frivolous if it is filed only to delay the enforcement of the trial court's judgment. Delay can be assumed where an appeal lacks merit. If an appellant knew or should have known that an appeal was ill-founded, sanctions should issue." (Citation and punctuation omitted.) *Vaughn v. Roberts*, 282 Ga. App. 840, 841 (640 SE2d 293) (2006).

A review of the record and Potts' arguments on appeal compel the conclusion that this appeal is frivolous and was brought only for purposes of delay. "[A]s detailed above, [Potts'] arguments are not merely meritless but frivolous[,]" and he "could not have reasonably anticipated reversal by this [C]ourt[.]" *Murphy v. Murphy*, 328 Ga. App. 767, 774 (4) (759 SE2d 090) (2014). Accordingly, we exercise our inherent power to impose a frivolous appeal penalty against Potts in the amount of $2,500. This penalty shall constitute a money judgment in favor of the Defendants, jointly and severally, against Potts, and the trial court is directed to enter judgment in such amount upon return of the remittitur in this case.

See Court of Appeals Rule 7 (e) (3) ("Upon filing of the remittitur in the trial court, the penalty may be collected as are other money judgments.").

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur fully and specially.*

# In the Court of Appeals of Georgia

A25A0111.  POTTS v. RICHARDSON et al.

HODGES, Judge, concurring fully and specially.

I concur fully in the majority's reasoned and well-written opinion. I write separately only to highlight the absurdity and lack of professionalism displayed by the appellant in this case, to caution other members of our profession from adopting a similar tack, and to encourage our profession to strive continuously to meet the highest ideals expressed in the Lawyer's Creed and in the Rules of Professional Conduct. We can do better. Much better.

This manufactured dispute, which has now consumed the time and effort of a trial court judge and three judges of this Court, not to mention their respective staffs, began with a simple, *private* e-mail from one attorney to another:

> RICHARDSON: James, it appears you did not file the Keunz manual under seal as agreed and as allowed by the [c]ourt, and it appears you are in violation of the protective order by making a public filing. I am copying Keunz's attorney, so he is aware.

Perhaps Mr. Richardson was mistaken. In any event, Mr. Potts' initial response was direct, but otherwise non-offensive:

> POTTS: I disagree. It was filed under seal. All my best.

The e-mail exchange could have very easily ended there, and any lingering misunderstanding could have, and should have, been resolved by a telephone call. Indeed, a great many things *could* have been said — and *should* have been said — instead of what *was* said next:

> POTTS: Mr. Richardson, Your email from September 7, 2023 is false. I did file the [manual] under seal. Retract your false statement publicly and quickly - within 7 days as mandated by OCGA § 51-5-11. If not, I'll seek legal recourse against you and your firm. All my best.

By any metric, Potts' second e-mail crossed the line from zealous self-advocacy to a blatant lack of professionalism.

"A Lawyer's Creed," promulgated by the Chief Justice's Commission of Professionalism, provides in relevant part: "To the opposing parties and their counsel, I offer fairness, integrity, and civility. I will seek reconciliation and, if we fail, I will strive to make our dispute a dignified one." The Creed also states: "To my colleagues in the practice of law, I offer concern for your welfare. I will strive to make our association a professional friendship."

To those ends, the "Aspirational Statement on Professionalism" that accompanies the Creed cites the "unfortunate" trend of "a lack of courtesy and civility among members of our profession[.]" One of the nine "General Aspirational Ideals" that follows the Aspirational Statement is "[t]o preserve the dignity and the integrity of our profession by [one's] conduct. The dignity and the integrity of our profession is an inheritance that must be maintained by each successive generation of lawyers." More specifically, we should aspire "[t]o treat opposing counsel in a manner consistent with his or her professional obligations and consistent with the

dignity of the search for justice" by, among other things, being "courteous and civil in all communication[.]"

While some may discount these principles as mere aspirational goals, their purpose is both clear and justified.

> In drawing the distinction between professionalism and ethics, Chief Justice Clarke has often said that "ethics is that which is required and professionalism is that which is *expected*." On one hand, the practice of law is dependent to a great extent on lawyers having respect for each other . . . and according each other a high degree of civility. On the other hand, lay persons sincerely believe that when a justiciable issue arises, if they so desire they will be accorded their "day in court." These expectations on the part of lawyers and lay persons are reasonable and are fully contemplated by our system of jurisprudence. Therefore, when these expectations are not fulfilled, there is understandable discontent with our system of justice. *If the bar is to maintain the respect of the community, lawyers must be willing to act out of a spirit of cooperation and civility and not wholly out of a sense of blind and unbridled advocacy.*

(Emphasis supplied.) *Evanoff v. Evanoff*, 262 Ga. 303, 304 (418 SE2d 62) (1992) (Benham, J., concurring). Stated succinctly, if less eloquently, the need for professionalism has a deeper meaning: "Every lawyer, at least once in every case, feels himself crossing a line that he doesn't really mean to cross. It just happens, and if you

cross it enough times it disappears forever." *The Rainmaker* (American Zoetrope and Constellation Films 1997).

Court of Appeals Rule 7 (e) (2) authorizes us to "impose a penalty not to exceed $2,500" to deter frivolous appeals. Generally, "[a] claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F3d 1346, 1349 (II) (11th Cir. 2001); see also *Robinson v. United States*, 2024 U.S. App. LEXIS 29818, at *3 (11th Cir. Nov. 22, 2024) ("An appeal is frivolous when the party is not entitled to relief because there is no basis in fact or law to support their position."). As the majority points out, this case certainly checks that box, and had our limit for penalties been higher, I would have argued for a much higher penalty under the circumstances of this case.

In sum, we are faced with a frivolous lawsuit and an equally frivolous appeal — both of which have needlessly taxed multiple levels of this State's already strained judiciary. Perhaps the most alarming aspect of this case is the ease with which an attorney could so swiftly compromise his professionalism in response to a perceived slight. Nevertheless, it is my earnest hope that the imposition of a frivolous appeal penalty here, as well as a review of the Lawyer's Creed and the Rules of Professional

Conduct, will lessen future departures from professionalism to the extent we have seen in this case and that we will all be reminded to strive continuously to meet the highest ideals of our shared profession.

I am authorized to state that Presiding Judge McFadden joins in this special concurrence.